### ENGELN ELECTRIC COMPANY OF ILLINOIS v. A. J. KOLLING.[1]

May 2, 1930.

No. 27,678.

[1]Reported in 230 N. W. 778.

*George A. Lewis,* for appellant.
*Fowler, Carlson, Furber & Johnson,* for respondent.

HOLT, J.

Defendant appeals from the order denying a new trial.

The action is replevin of four electrical machines of the alleged value of $2,020 and damages for the value of their use while detained from plaintiff. The answer denied plaintiff's ownership and alleged that defendant bought the machines from plaintiff's agent at Minneapolis and paid the purchase price in full. The verdict was for plaintiff, and the jury found the value of the machines to be $800 and $200 damages for the detention.

The testimony is not much in dispute as to these facts: Plaintiff is engaged in selling electrical machines and appliances used by physicians in diagnosing and treating disease. Its chief place of business is Chicago, Illinois. During the time here involved it had a branch store at 1006 Marquette avenue, Minneapolis, in charge of one Lang. Lang's territory covered the Dakotas, Minnesota, and part of Wisconsin. Plaintiff had samples of its machines and appliances at the store mentioned for display and demonstration purposes and also kept parts and smaller machines for sale over the counter. The parts and smaller appliances of the price of $25 or less were kept in stock and sold for cash. But the more costly machines kept for display and demonstration, such as those here involved, were not to be sold unless directly authorized by the home office. Orders for such machines were to be solicited and

sent to the Chicago office for approval and when delivered payment of the price was to be made directly to plaintiff. In this instance Lang let defendant take one of the machines into his possession upon a payment of $75. When possession of the other three machines in suit was obtained by defendant he gave an order for the purchase thereof. Defendant then observed that the order required an approval by plaintiff and also that checks were to be made payable to plaintiff. Defendant nevertheless paid Lang in cash on receiving a bill of sale executed by him in the name of plaintiff.

Lang's version was that he merely pledged the property to defendant as security for money advanced Lang for his personal needs, and also that he gave defendant possession and the bill of sale so that defendant would be in better position to raise money for Lang's use. Plaintiff's manager corroborated Lang's testimony that Lang had no authority to dispose of these machines in any manner unless he received direct instructions from plaintiff.

From defendant's admissions the jury could find that he was not only the user of electrical apparatus of the sort here in question, but also dealt in them when he could do so profitably; that he knew Lang was always hard up; that he advanced money to Lang, not only to pay his help but for his living expenses or personal needs; and that the cash defendant paid to Lang was much less than the prices plaintiff quoted to the trade. There was much in the acquaintance and financial dealings between Lang and defendant to justify the conclusion that defendant knew that Lang had no authority either to sell the machines or to receive the price for them; in other words that he was an agent with limited authority.

The defendant contends that the verdict is not justified by the evidence and is contrary to law. This contention is based on that part of the verdict finding the value of the property to be only $800 when the retail price was more than $2,000. It must be remembered that these machines were display stock, and some if not all had been used for some time in giving demonstrations. Moreover, the retail prices were subject to a discount. It was for the jury to

determine the actual value of the machines at the time defendant refused on demand to deliver them. Their value might have been much less than the retail prices quoted for new machines. Blume v. Ronan, 141 Minn. 234, 235, 169 N. W. 701, cited by defendant, is not in point, for there, under the court's instruction, it was demonstrable that the verdict was "a palpable attempt to split the difference between the parties in disregard of the evidence." There may be a suspicion that the jury dealt more generously with defendant in fixing the value of the machines than the evidence warranted; but this cannot be said to be to his prejudice.

While admitting the correctness of the instructions given, the claim is made that they were not applicable to the evidence. In this we think defendant is in error. He really by his pleading admitted the ownership of plaintiff unless its agent through whose act defendant claims title had authority to transfer it. The evidence bearing on that issue, in part hereinbefore referred to, made the instructions given appropriate. Defendant is not in a position to urge error for failing to give an instruction not presented until in the motion for a new trial.

Newly discovered evidence was assigned as a ground for a new trial. Defendant's attorney makes an affidavit to the effect that plaintiff was protected by a surety bond against any misappropriation of its funds by Lang; that plaintiff made a claim against the obligor in the bond for $1,700, and a settlement was made by the payment of $1,000; and that thereby the sale to defendant was ratified. This cannot be claimed newly discovered, for the existence of the bond, and a claim made by plaintiff thereunder, were brought out by defendant in the cross-examination of plaintiff's witnesses at this trial. No effort was then made to develop this matter into ratification of Lang's unauthorized sale.

The order is affirmed.