# VICTOR THIESEN v. JOSEPH HELLERMANN.[1]

May 21, 1954.

No. 36,193.

---

[1]Reported in 64 N. W. (2d) 762.

*Meagher, Geer, Markham & Anderson* and *O. C. Adamson II,* for appellant.

*Fred J. Hughes,* for respondent.

CHRISTIANSON, JUSTICE.

Action is brought by plaintiff to recover for personal injuries and property damage resulting from an intersection collision between a car owned and driven by plaintiff and a car owned and driven by defendant. Defendant counterclaims to recover for personal injuries and property damage and for his wife's medical expenses and loss of her services resulting from the same collision. The jury returned a verdict for plaintiff and against defendant on his counterclaim. The trial court granted plaintiff's motion for a new trial on the sole issue of damages. Defendant appeals from the trial court's order denying his alternative motion for judgment notwithstanding the verdict or for a new trial.

At about 6 p. m. on March 3, 1953, plaintiff was driving east in his 1950 Ford on U. S. highway No. 52 approaching the intersection of U. S. highways No. 52 and No. 152 which is located just within the city limits of St. Cloud, Minnesota. At the same time and place, defendant with his wife and five children was traveling northwest in his 1947 Chevrolet on highway No. 152 approaching the intersection. The cars collided at the intersection with the resulting injuries and damage to the parties.

Both highway No. 52, also known as Division street in St. Cloud, and highway No. 152 are divided highways and are level in the vicinity of the intersection. The eastbound section of highway No. 52 is a one-way roadway surfaced with concrete and is 33 feet wide. The northwest-bound section of highway No. 152 is also a one-way roadway. It is surfaced with tarvia which widens from 28 feet to about 60 feet at the entrance to the intersection. A stop sign is lo-

cated 30 feet from the intersection on the northwest-bound section of highway No. 152. Highway No. 52, a heavily traveled arterial highway, has a zoned speed limit of 40 miles per hour in the vicinity of the intersection. Both parties were familiar with this intersection.

At the time of the accident, slightly over two lanes of the eastbound section of highway No. 52 had been cleared of a recent heavy snowfall by plowing the snow toward the south edge of the highway and creating a substantial bank of snow. The entrance to the northwest-bound section of highway No. 152 had been cleared by plowing the snow into a pile about five to six feet high on the southwest corner of the intersection. The cleared portions of the highways were clean and dry, and except for the snow, visibility was good. It was still daylight and headlights were not needed. A series of photographs taken on March 5, 1953, before the conditions present at the time of the accident had been altered substantially, show the snow and its effect upon visibility at and near the intersection.

Plaintiff testified that as he approached the intersection he was traveling in the center lane, the cleared lane closest to the snowbank; that he was driving at a speed of 35 miles per hour; that he was observing ahead of him; that he did not observe defendant's car until it came out from behind the snowbank suddenly; and that then there was no opportunity for him to avoid the collision.

Defendant testified that he stopped his car near the stop sign; that he was unable to observe to the west from this position because of the snowbank;[2] that he then drove slowly toward the intersection and stopped again; that he could not remember whether or not he could see to the west from this position; that he did not see plaintiff's car; and that he could not remember the collision or where it took place within the intersection. Defendant's wife testified that

---

[2]Defendant's testimony that he could not see to the west because of the snowbank when he first stopped near the stop sign is entirely inconsistent with the photographs taken at driver's eye level at points 20 feet and 90 feet south of highway No. 52 and the testimony of the professional photographer who took the pictures to the effect that although the view to the west was reasonably good at 20 feet south of highway No. 52, the view at 30 feet was still better.

they first stopped just beyond the stop sign; that at that point you could not see to the left because of the snowbank on the westerly curb line of highway No. 152; and that the collision took place as defendant stopped for the second time in the intersection.

■ Defendant contends that the evidence is insufficient to support the verdict against him. Necessarily, he argues not only that he was free from negligence as a matter of law but also that plaintiff was guilty of contributory negligence. While defendant concedes that the driver of a vehicle approaching a through highway is under a duty to stop at a place where he may effectively observe approaching traffic if there is a reasonable opportunity to do so (Bohnen v. Gorr, 234 Minn. 71, 47 N. W. [2d] 459), he maintains that he had no opportunity whatsoever to view traffic approaching from the west because of the snowbank and that, therefore, his only alternative was to proceed slowly, but nevertheless blindly, into the intersection. However, the photographs previously referred to, which were offered by plaintiff and received in evidence without objection, effectively refute defendant's contention that he had no opportunity whatsoever to view traffic approaching from the west. First, they show that although the snowbank along the south edge of highway No. 52 was substantial, it did not constitute a serious obstruction to vision except at the immediate corner of the intersection and apparently defendant does not contend to the contrary. Second, the pictures show that the snowbank along the westerly edge of highway No. 152 was insignificant except at the immediate corner of the intersection where the snow obtained from clearing the intersection had been piled to a height of five or six feet. Thus they unequivocally contradict defendant's contention that the snow totally obstructed vision to the west as one approached the intersection. On the contrary, they support plaintiff's contention that the only total obstruction to vision to the west was the five-to-six-foot-high snow pile at the immediate corner of the intersection. Moreover, they disclose, as does the testimony of the professional photographer who took the pictures, that had defendant stopped just short of the snow pile at the corner before entering the intersection, he would have had an

effective view of traffic approaching from the west. In view of defendant's familiarity with this intersection and his knowledge of the fact that highway No. 52 was a heavily traveled arterial highway, the contention that defendant was free from negligence as a matter of law in proceeding into the intersection as he did without first having made reasonable observations for traffic approaching from his left finds no substantial support in the record.

Defendant bases his contention that plaintiff was contributorily negligent as a matter of law on the same assumption of fact with respect to the snowbank. He argues that plaintiff should have known that a northwest-bound car on highway No. 152 would necessarily have to proceed blindly into the intersection and that plaintiff should have approached the intersection slowly in the north lane, the lane farthest from the entrance of highway No. 152 into the intersection, prepared to avoid such a car driving into the intersection. However, again on this issue, there is ample evidence to support the jury's finding that plaintiff was driving at a reasonable rate of speed; that he was keeping a proper lookout; that he was not negligent in failing to anticipate that defendant or anyone else was about to drive into the intersection without first making any effective or reasonable observations for traffic approaching from the west; that he had no reasonable opportunity to avoid the collision; and that, therefore, he was not contributorily negligent. It follows that the trial court correctly denied defendant's motion for judgment notwithstanding the verdict.

■ Defendant contends that the verdict for plaintiff was a compromise verdict and therefore contrary to law. He argues that since liability was disputed and since the verdict was inadequate, the jury necessarily compromised between plaintiff's right of recovery and the amount of his recovery. While defendant cannot complain of the inadequacy of the verdict as such, he does have standing to challenge it as a compromise verdict.[3] Although the converse is not

[3] Alden v. Sacramento S. Fruit Lands Co. 137 Minn. 161, 163 N. W. 133; Siverts v. Dahoot, 150 Minn. 179, 184 N. W. 839; cf. Engeln Elec. Co. v. Kolling, 180 Minn. 264, 230 N. W. 778; Pennig v. Schmitz, 189 Minn. 262, 249 N. W. 39. We are aware that many jurisdictions hold to the contrary

true, all compromise verdicts are inadequate in that they are for less than the minimum amount returnable for plaintiff under the evidence. Defendant bases his contention that the verdict in the instant case was a compromise verdict on the fact that the trial court granted plaintiff's motion for a new trial on the issue of damages upon the ground of insufficient damages given under the influence of passion and prejudice. His contention raises the question of whether the trial court's determination that the damages awarded plaintiff were insufficient is necessarily a determination that the verdict was for less than the minimum amount returnable for him under the evidence. If it is, we agree that consistency would require the trial court, in passing upon defendant's motion for a new trial on the ground that the verdict is not justified by the evidence and is contrary to law, to also conclude that the verdict was the result of a compromise on the issues of defendant's liability and plaintiff's damage. However, as this court has repeatedly stated, the granting of a new trial for insufficient damages rests largely in the discretion of the trial court, and its action will not be reversed except for a clear abuse of discretion, as defined in Hicks v. Stone.[4] Upon examination of this court's opinion in Hicks v. Stone and the subsequent cases following it, it is apparent that we will not reverse the action of a trial court in granting a new trial for insufficient damages unless the preponderance of the evidence clearly demonstrates that the verdict is adequate. Since the size of a verdict may be within the limits set by the evidence and yet be substantially less than what is reasonably supported by the preponderance of the evidence, a trial court's determination that the damages awarded are insufficient is not necessarily a determination that the verdict is for less than the minimum amount returnable for plaintiff under the evidence. Consequently, the trial court's order granting plaintiff's

in tort cases. However, we can see no valid distinction for this purpose between a case that involves liquidated damages and one that does not where the verdicts in both cases are demonstrably compromises. See, 5 Dunnell, Dig. & Supp. § 7115b.

[4]Hicks v. Stone, 13 Minn. 398 (434). See the cases collected in 5 Dunnell, Dig. & Supp. § 7141, particularly, note 45.

motion for a new trial on the issue of damages upon the ground of insufficient damages is not determinative of the issue of whether the verdict is less than the minimum amount returnable for plaintiff under the evidence and therefore a compromise verdict.

The verdict in this case was for $2,000. Plaintiff's medical expenses up to the time of trial were approximately $600. As for the damage to plaintiff's car, defendant employed the technique of challenging plaintiff's estimate of $850, which was based on his opinion as to the value of the car before it was wrecked, as unreasonable without introducing any evidence of a reasonable amount. Plaintiff's actual wage loss to the time of trial was approximately $800. Defendant's doctor testified, in effect, that plaintiff's only injury was a hard blow to the kneecap which resulted in a simple fracture of the kneecap and temporary swelling of the knee which would have no permanent effect. He testified that plaintiff's rate of recovery should have been more rapid and that he was unable to explain the slow rate of recovery. When asked about the possibility of malingering, he emphasized that the patient's desire to get well is a dominant factor in recovery from this type of injury. Looking at all of this as well as defense counsel's closing argument to the jury, which is included in the record on appeal, it is apparent to us not only that defendant attempted to reduce the minimum amount returnable for plaintiff under the evidence to somewhat less than $2,000 but also that his counterclaim was interposed solely for defense purposes. Having implicitly invited the jury to return a verdict of less than $2,000, defendant is hardly in a position to maintain that such a verdict is a compromise verdict. This is particularly true on appeal where, as here, the trial court's determination that the verdict was not a compromise verdict is amply supported by the record.

■ Defendant assigns as error the trial court's order granting plaintiff's motion for a new trial on the sole issue of damages. However, since a new trial cannot be predicated upon post-trial errors, allegedly erroneous post-trial errors cannot be reviewed on an appeal from an order denying a new trial. 1 Dunnell, Dig. (3 ed.) § 395e. See, also, Marty v. Nordby, 201 Minn. 469, 276 N. W. 739. Moreover,

an order granting a new trial on the sole issue of damages is not appealable. Roelofs v. Baber, 194 Minn. 166, 259 N. W. 808. Nevertheless, since the question of whether the trial court should have granted a new trial on the sole issue of damages, as it did, or on all issues is the crux of the present dispute between the parties, we think that it is appropriate for us to make certain observations with respect to this subject.

Where it is a fair inference that inadequate damages were awarded as a compromise between the right of recovery and the amount of damages sustained, we have consistently held that a new trial should be granted on all issues. Caswell v. Minar Motor Co. 240 Minn. 213, 60 N. W. (2d) 263; Flaugh v. Egan Chevrolet, Inc. 202 Minn. 615, 279 N. W. 582. On the other hand, where such a compromise does not fairly appear but the verdict is nevertheless inadequate, a new trial should be limited to the issue of damages only. Blacktin v. McCarthy, 231 Minn. 303, 42 N. W. (2d) 818. Although these rules were enunciated in cases where this court was considering the question in the first instance, they, of course, are equally applicable to the trial courts and should control their determination of the question in all cases. But this is not to say that where the trial court has initially passed upon the question we will consider the question *de novo* on appeal. We recognize that the application of the foregoing rules to a particular case necessarily involves the exercise of judicial discretion, and in reviewing the granting of a new trial on the sole issue of damages we will be guided by the general rule applicable to other discretionary orders. See, Annotation, 29 A. L. R. (2d) 1199, 1213.

Defendant's fourth assignment of error has been considered but found not to justify a reversal. Since the remaining assignments of error are neither argued nor briefed, they need not be considered and are deemed waived. 1 Dunnell, Dig. (3 ed.) § 366.

For the reasons stated, the order denying defendant's motion for judgment notwithstanding the verdict or for a new trial should be affirmed.

Affirmed.