REGAN FARMERS UNION COOPERA-TIVE, a Cooperative Corporation, Plaintiff and Appellee,

v.

Robert SWENSON, Defendant and Appellant.

Civ. No. 9285.

Supreme Court of North Dakota.

April 25, 1977.

Rehearing Denied May 12, 1977.

C. J. Schauss, Mandan, for plaintiff and appellee.

William A. Strutz and Gary R. Wolberg, of Fleck, Mather, Strutz & Mayer, Bismarck, for defendant and appellant; argued by William A. Strutz, Bismarck.

ERICKSTAD, Chief Justice.

In this case we are asked to overturn an order of the district court for Burleigh County granting a new trial.

A contract was entered into on or about September 25, 1972, between Robert Swenson and the Regan Farmers Union Cooperative, wherein Swenson agreed to sell to the Cooperative 27,500 bushels of durum wheat at the agreed price of $1.93 per bushel to be delivered to the Cooperative at its elevator in Regan, North Dakota, on or before the 30th day of May, 1973. This contract was in writing and there is no dispute as to its effect as written.

No grain was delivered to the elevator by Swenson prior to May 30, 1973. The contract provided for an extension of time "at buyer's option", but it was disputed whether that option had been exercised. Although the Cooperative does not affirmatively allege in its pleadings that this option was exercised prior to the May 30th expiration date, Richard Lee, the manager of the Cooperative, testified that he and Swenson, in a conversation they had in early May of 1973, discussed delivery of the wheat some time in July of that year. Lee stated that he called Swenson on July 18, 1973, and asked for delivery of his durum on contract.

It was Lee's testimony that, one or two days after he demanded delivery, Swenson called back and said, "I have decided to deliver that grain."

Swenson's testimony as to what transpired after the contract was entered into presents a significantly different picture than does the testimony of Lee. Swenson testified that several times in January, February, and March of 1973 he approached Lee about delivering the grain, as he believed it would take some time to haul it into town and he would not have sufficient time during spring planting. It was his testimony that each time he approached Lee on this matter he was ignored, and left after requesting that Lee telephone him when he could take delivery. He said that finally, on about the 15th of May, he orally informed Lee that the contract was null and void, that Lee responded that he would have to put that in writing, and that he went home and wrote a letter to Lee informing him that the contract was null and void because of the inability of the elevator to accept delivery under the contract. Defendant's Exhibit A, which is purported to be a handwritten copy of this letter, dated May 17, 1973, was received in evidence and is before us on the record. Lee testified that he received no such letter.

Between the dates of July 21 and August 7, 1973, Swenson delivered a total of 21,-745.66 bushels of wheat to the Regan Cooperative's elevator. The Cooperative maintains that these deliveries were made pursuant to the contract of September 25, 1972. Swenson, however, contends that this grain was not delivered pursuant to such contract and that he should be paid the market price on the dates the grain was delivered. There was testimony by Swenson that in absence of specific understanding his contention is supported by usage of trade.

The Cooperative brought suit by a complaint dated January 30, 1974, alleging the contract of September 25, 1972, and alleging that, having delivered 21,745.66 out of 27,500 bushels of No. 1 hard amber durum wheat at the agreed price of $1.93 per bushel, Swenson repudiated the contract on the 17th day of August, 1973; the market price of No. 1 hard durum wheat in the vicinity of Regan on the date of repudiation was $6.47 per bushel; and that the Cooperative was thus damaged by the difference between the market price of said wheat on the date of repudiation and the contract price, totaling $26,124.68. Swenson answered the complaint, admitting the contract of September 25, 1972, but maintaining it was null and void on the date of the alleged damages to the Cooperative. He asserted a counterclaim alleging damages in the sum of $126,194.50, representing the market price of the 21,745.66 bushels delivered as of the dates of delivery.

The case was tried to a jury, which returned a verdict for Swenson on his counterclaim in the amount of $67,628.02. The Cooperative then filed a motion for judgment notwithstanding the verdict; or, in the alternative, for a new trial. The motion for a judgment notwithstanding the verdict was denied, but the motion for a new trial, based upon insufficiency of the

evidence and upon the verdict being against the law, was granted. Swenson appeals from the order granting this motion.

■ This court discussed the standard required to overturn an order granting a new trial in the recent case of *Cook v. Stenslie,* 251 N.W.2d 393 (N.D.1977).

"We begin with the undisputed premise that a motion for new trial made under Rule 59(b), North Dakota Rules of Civil Procedure, is addressed to the sound discretion of the trial court, and the trial court's action in granting such a motion will not be disturbed on appeal unless a manifest abuse of discretion is shown. [Citations omitted.]" *Id.* at 395.

*Accord, Wrangham v. Tebelius,* 231 N.W.2d 753 (N.D.1975); *Skjonsby v. Ness,* 221 N.W.2d 70 (N.D.1974); *Long v. People's Department Store,* 95 N.W.2d 904 (N.D. 1959).

Swenson argues in this appeal that granting a new trial was a manifest abuse of the trial court's discretion.

Our initial difficulty in resolving this case stems from the fact that the trial court's reasons for granting a new trial are contained only in the transcript of the oral decision. Although this transcript, reproduced as it is in the judgment roll, technically complies with the requirement of Rule 59(f), N.D.R.Civ.P., that: "With all orders granting or refusing a new trial, the judge shall file a written memorandum . .", it is questionable whether the requirement of that same subsection, that the memorandum concisely state the grounds on which the ruling is based has been complied with. The more relevant parts of the transcript of the court's decision follow:

"As I said before, I am going to grant a new trial because I believe the jurors were confused and misled by some of the things they were told by the Court. The plaintiff, having failed, is very willing to take advantage of the situation. Even the defendant thinks he should have sustained a greater recovery under his version of the facts. He is willing, however, to accept the verdict as rendered. The plaintiff is not willing.

"We have some information which we ordinarily would not have in this case because of the fact that the jurors propounded questions to the Court which the Court attempted to answer, after consultation with the attorneys on both sides. The first question came out indicating that the jurors did not believe that there was any testimony as to the price of wheat on a specific date. This being so, then the evidence was insufficient. Later on they canceled that question and wanted to know what to do about the checks which had been prepared, amounting to thirteen thousand and some odd dollars, representing what the elevator thought the value of the grain would be at $1.93 per bushel from July 21st, or whenever, to August 9th or 10th. They were told what to do with the checks, to exclude them in one instance and to include them in the other. By happenstance their computations were worked out on the sheet containing the Court's answer to the questions which was sent back to them. This showed that they did subtract the thirteen thousand and some odd dollars from the eighty thousand and some odd dollars, indicating that they would have come out with a verdict, had it not been for the Court's answer, in the sum of eighty thousand plus-dollars. Now we know that the thirteen thousand-plus dollars was based on the price of wheat at $1.93 per bushel. In arriving at its eighty thousand-plus figure we have no way of knowing what the jurors used as a price per bushel. We do know, however, that in their computations they utilized two different standards. The $13,000 figure represented the elevator's version for the value of wheat delivered at $1.93 per bushel. This was subtracted from the eighty thousand-plus figure which represented the value of wheat at another unknown—to us at least—price per bushel. The result could only be a faulty verdict.

"Even though I am granting a new trial, since I believe such action should be taken in the interest of justice, . . .

\* \* \* \* \* \*

"You gentlemen will receive a transcript of my ruling here today which will constitute my compliance with the Rule that provides that the Court's ruling on motions of this kind be in writing. It will be, in effect, a written memorandum decision. You already know what my ruling is on these motions. You won't have to sit back and wait and conjecture."

■ As the motion for a new trial specified as its grounds that the evidence was insufficient to justify the verdict and that the verdict was against the law, we read the trial court's decision as relying on those grounds only. A new trial may be granted for those two specified causes under Rule 59(b)(6), N.D.R.Civ.P. While the court's decision could be read to embody other causes enumerated in Rule 59(b), though not contained in the motion for a new trial, since the parties were not given notice and an opportunity to be heard on any such additional cause, a new trial could not be properly granted based upon such new cause. Rule 59(i), N.D.R.Civ.P.

■ We have difficulty following the trial court's reasoning that external factors, which it interprets as being indicative of confusion on the part of the jury, relate to the insufficiency of the evidence. The court speaks of a question coming out of the jury, indicating the jurors did not believe there was testimony as to the price of wheat on a specific date. (The jury later withdrew that question before it was answered.) From this the court concluded that the evidence was insufficient. In fact, the court had received certain evidence of the market price of durum wheat in the Regan area on July 20 through August 7, 1973, as well as 53 grain scale tickets and a compilation of said tickets, showing different quantities delivered to the Cooperative's elevator at specific times between those dates. The jury thus had all the evidence it needed to reach a verdict for Swenson in the sum of $126,194.50—the amount asked for in his counterclaim. The trial court was apparently not concerned with whether there was sufficient evidence, but rather was concerned with whether the jury used

that evidence properly. It is not a function of the courts to explain the thought processes of a jury. *See State v. Loyland*, 149 N.W.2d 713, 725 (N.D.1967), which, though it is a criminal case, is applicable in principle.

■ It has been stated as a general rule that in an action on contract, a party *against* whom an inadequate verdict for money damages has been rendered ordinarily cannot complain of the inadequacy of the verdict. Annot., 31 A.L.R. 1091 (1924), supplemented in 174 A.L.R. 765 (1948). *Accord, Kelly v. National Casualty Co.*, 10 Mich.App. 450, 159 N.W.2d 363 (1968); *Costello v. Wood*, 89 Ariz. 270, 361 P.2d 10 (1961); *Hoffman v. Brown*, 143 Colo. 587, 354 P.2d 599 (1960); *Terry v. Biswell*, 66 N.M. 201, 345 P.2d 217 (1959).

■ The situation before us is quite similar to the one confronting the Supreme Court of Arizona in *Costello v. Wood, supra.* In that case, the plaintiffs brought an action for the recovery of $5,534.28, which was the amount set forth on an itemized contract for the repair of a pump, upon which the action was brought. When the jury brought in a verdict for $4,447.63, the defendants requested a new trial on the grounds that the verdict was contrary to the law of the case in that the jury refused or failed to follow the instructions given by the court, which instructions stated that, should the jury find for the plaintiff, the damages would be the amount due under the contract. It was held that, since the verdict was for less than the plaintiff was entitled, defendants could not be heard to complain as they were not injured.

In the instant case, the jury found in favor of Swenson and against the Cooperative, specifically dismissing the complaint of the Cooperative. Even though, under these circumstances, it would appear that the evidence would mandate that damages be found by referring to the market prices on the dates that Swenson delivered the grain to the Cooperative's elevator, the Cooperative was not injured by a lesser verdict and cannot complain thereof on that basis alone.

*Sandberg v. Smith*, 234 N.W.2d 917, 920 (N.D.1975).

This case is to be distinguished from *James Turner & Sons v. Great Northern Railway Co.*, 67 N.D. 347, 272 N.W. 489 (1937). In that case, where a verdict was reached for considerably less than the value of property as established by undisputed testimony and the trial court had specifically instructed that, should the verdict be for plaintiffs, the damages should be for that undisputed amount, an order denying a new trial was reversed. Whether the inclusion of a specific amount of damages in the jury instructions is a significant point of distinction we need not determine, as this case is clearly distinguishable in that the holding in *Turner* was based on a showing of a compromise verdict. There is no such showing in the instant case, nor has there been any allegation of a compromise verdict. Both parties, as well as the trial court, have spoken in terms of miscalculation and mistake on the part of the jury. Since a compromise verdict has been neither asserted by the Cooperative nor found by the trial court we need not be concerned by the meaning of such a verdict or its consequences. Without adopting the views exposed therein nor rejecting them, we refer the reader to *Thiesen v. Hellermann*, 242 Minn. 218, 64 N.W.2d 762 (1954), at 64 N.W.2d 765 *et seq.*

One jury mistake, as pointed out by the trial court, is with reference to the checks totaling $13,081.67 which the Cooperative had made out in preparation of payment to Swenson based on the contract price of the grain; which checks Swenson had refused to accept. The jury, apparently confused as to whether or not these checks would be cancelled, asked the court how this figure should be treated in arriving at their final verdict. The court answered that the jury should "exclude the checks", apparently meaning that the existence of those checks should simply be ignored. The jury subtracted $13,081.65 from the figure it had previously arrived at, as evidenced by calculations shown on the face of the written answer to their question. It can only be speculated as to what other factors entered into reaching a lesser verdict than what Swenson was entitled to on the basis of the market price on the dates of delivery.

■ In its decision to grant a new trial, the trial court states its belief that the jurors were confused and misled by some of the things they were told in court. No error in the instructions, however, has been specified, and nothing otherwise said by the court to the jury has been specifically shown to have been error, and thus misleading to the jury. The evidence was sufficient to sustain the verdict for Swenson, inasmuch as it was sufficient to sustain a verdict for much more. It is not against the law.

■ Though the trial court has a certain margin of discretion within which to weigh the evidence, it may not act as a "thirteenth juror". *See Cook v. Stenslie, supra*, 251 N.W.2d at 395. The trial court must have a specific reason for granting the new trial:

"Although . . . this court is more reluctant to overturn an order of the trial court granting a new trial than it is an order denying a new trial, there must be some basis in the record for the granting of the new trial." *Ferguson v. Hjelle*, 180 N.W.2d 408, 413 (N.D.1970)

The confusion of the jury which the trial court speaks of is a matter of speculation. There is nothing on the record to support this conclusion.

As the verdict was well within the evidence and no errors of law are asserted and none are found to have occurred in the trial, it was clearly error for the trial court to grant the motion for new trial. We accordingly hold that the trial court manifestly abused its discretion in speculating on the basis for the verdict and in granting a new trial for reasons other than those specified in Rule 59(b), N.D.R.Civ.P.

The order granting a new trial is reversed and the case is remanded with directions to reinstate the judgment.

VOGEL, PEDERSON, PAULSON and SAND, JJ., concur.