## JOSEPH ROMANO AND ANOTHER v. FRANK J. DIBBS AND ANOTHER.

98 N. W. (2d) 146.

July 31, 1959—No. 37,666.

*Irving C. Iverson* and *Iverson, Coulter & Nelson,* for appellants.
*Irwin Ketroser,* for respondents.

MURPHY, JUSTICE.

This is an appeal from a judgment in favor of the guardian of Gerald Romano, a minor 18 years of age, and against the defendants in the sum of $7,594.38 and from an order denying their motion for a new trial on the issue of damages only or for a reduction of the verdict. The defendants contend (1) that the trial court erred in permitting an expert witness to answer a hypothetical question and (2) that the verdict is excessive and based upon passion and prejudice. The father had a verdict for $281.45.

From the record it appears that the defendants' automobile collided with the rear end of a car which the plaintiff was driving on October 16, 1956. There is no question as to the defendants' liability. At the time of the accident the plaintiff complained of pain and discomfort in his neck and noticed a slight swelling. The day following the accident he was examined by Dr. Krieser. The examination revealed a marked spasm of the muscles on the right side of the spine on the posterior aspect of the neck, tenderness of these muscles, and limitation of motion of the neck. Dr. Krieser diagnosed that the plaintiff had suffered a whiplash injury to his neck. He prescribed shortwave diathermy and muscle-relaxing medication. After 2 weeks the diathermy was discontinued, since Dr. Krieser felt further treatment would be of no particular benefit. He testified that the plaintiff was not disabled beyond October 29, 1956. In the interval between the accident and the trial, the plaintiff was examined by several other doctors. His next examination was by Dr. Pohl, an orthopedic specialist. Dr. Pohl likewise diagnosed the condition as a whiplash injury. He prescribed rest when possible, application of heat to the painful areas, and avoidance of severe exertion or athletics. Dr. Strickler, who examined the plaintiff on behalf of the defendants, testified that plaintiff's complaint of continuous pain was not consistent with the type of injury which the plaintiff had sustained and that his condition was not permanent. He was of the opinion that the plaintiff had or would shortly recover from the effects of the injury. There was additional

evidence from the plaintiff and his mother that he suffered from pain and discomfort because of the injury; that he could no longer engage in athletic activities; that he was frequently tired after work and would find it necessary to take naps.

The evidence indicates that prior to the time of the accident the plaintiff was employed as a stock boy by the Dayton Company. He missed 2 weeks' work because of his injury. He was a student at the Columbia Heights High School but only missed 2 days because of the disability. At the time of the trial he was employed at the Schweigert Meat Company driving a panel delivery truck. This work required him to lift heavy cases in loading and unloading the truck. His supervisor testified that plaintiff was slow in doing his work but that he had never complained to him about pain in his back or neck but he may have brought it to the attention of other superiors at the Schweigert Company.

■ By the first assignment of error the defendants contend that the court permitted Dr. Pohl to answer a hypothetical question propounded by plaintiff's counsel which was incomplete. They assert that the trial court should have insisted that the doctor be given the complete facts upon which to base his opinion as to causation. We have examined the hypothetical question against the background of the record. While there is some merit to the defendants' objection that the question omitted certain relevant facts which should have been included, we do not think that deficiency amounted to prejudicial error. Whether a hypothetical question presents adequate foundation for an expert opinion rests largely in the discretion of the trial court and its decision will not be reversed except for a clear abuse of discretion. In Briggs v. Chicago G. W. Ry. Co. 248 Minn. 418, 429, 80 N. W. (2d) 625, 634, 635, we stated:

"* * * Long ago this court pointed out that the technical rules as to hypothetical questions are relaxing and this is a step in the right direction."

We also observed in that case that "an adversary enjoys certain safeguards in that he may on cross-examination supply omitted facts and ask the expert if his opinion would be modified by them." See, also,

Storbakken v. Soderberg, 246 Minn. 434, 75 N. W. (2d) 496; Kenney v. Chicago G. W. Ry. Co. 245 Minn. 284, 71 N. W. (2d) 669, certiorari denied, 350 U. S. 903, 76 S. Ct. 182, 100 L. ed. 793; McCormick, *Some Observations upon the Opinion Rule and Expert Testimony,* 23 Tex. L. Rev. 109.

■ The defendants attack the order of the district court denying their motion for a new trial on the issue of damages only or for a reduction of the award to plaintiff on the ground that the verdict was excessive and based upon passion and prejudice. The question of excessiveness of a jury verdict rests largely in the discretion of the trial court, and it is recognized that an appellate court should not revise the amount of a verdict unless it is so unjust and the impropriety of allowing it to stand would be so manifest as to show a clear abuse of discretion. Larson v. Degner, 248 Minn. 59, 78 N. W. (2d) 333; Riley v. Luedloff, 253 Minn. 447, 92 N. W. (2d) 806; Gilbertson v. Gross, 232 Minn. 373, 45 N. W. (2d) 547; Northern States Power Co. v. Barnard, 187 Minn. 353, 245 N. W. 609; 15 Am. Jur., Damages, § 205.

We think, however, that the amount of the verdict in this action is manifestly excessive in relation to the injuries actually sustained as established by the record. It appears that the special damages sustained by way of medical treatment were the sum of $113.60. He missed 2 weeks' work as a part-time stock boy as a result of the accident. He was away from school not more than 2 days. Aside from these items of damage, there is nothing in the record to support loss of income or loss of earning power. The plaintiff sustained mental suffering and pain as a result of the injury and up until the time of the trial at least was unable to participate in the athletic activities of a boy of his age. The record, however, does not satisfactorily establish that the pain which plaintiff has suffered as a result of the accident will be permanent. The only evidence as to permanent injury is that the plaintiff will have permanent scar tissue following healing of the ligaments. There is no evidence in the record, however, to show that the existence of scar tissue will result in any functional loss or limit the use or movement of plaintiff's neck or back. There is no evidence that the injury will result in any impairment of the plaintiff's enjoyment of living or that

it will affect his earning capacity. The testimony of the doctor with reference to the permanency of the injury is as follows:

"Q. What happens to the tissue when we have this healing?

"A. The tissues heal by what we call scar tissue, which is, of course, not the normal tissue and it often responds by pain when stresses and strains are put on it.

"Q. Is this, in your opinion, what is causing the pain and discomfort of which Gerald has been complaining?

"A. Yes.

"Q. Doctor, this scar tissue that you have described for us, will this tissue be scarred permanently?

"A. Yes."

While an appellate court is loath to interfere with the amount of a verdict approved by the trial court, we are of the view here that in light of the actual damages sustained and the evidence as to the extent of such damages the verdict is excessive. In Ahlstrom v. Minneapolis, St. P. & S. S. M. R. Co. 244 Minn. 1, 27, 68 N. W. (2d) 873, 889, we said:

"* * * by lack of a definite standard we do not forfeit our recourse to common sense and social practicality in given cases. * * * judicial care must be exercised lest a fatal financial burden be placed * * * out of sympathy for the plaintiff."

We are, accordingly, of the view that the verdict should be reduced to the sum of $4,500.

The verdict is set aside and a new trial is granted unless, within 10 days after the filing of the remittitur in the district court, plaintiff shall file a written consent to the reduction of the verdict to the sum of $4,500. If such consent is so filed, the verdict as reduced will stand and the order denying a new trial will be and is affirmed.

Reversed on condition.