HARRIET MARLOWE AND ANOTHER v.
SHERIDAN J. GUNDERSON.

109 N. W. (2d) 323.

April 28, 1961—Nos. 38,101, 38,102.

*Freeman, Peterson, Hoppe & Gaughan* and *David W. Nord,* for appellant.

*Ryan, Ryan & Ebert,* for respondents.

NELSON, JUSTICE.

These two cases arose out of an automobile accident which occurred near Brainerd, Minnesota, on October 18, 1958. Harriet Marlowe was the driver of a car owned by her husband, Thomas Marlowe. Defendant, Sheridan J. Gunderson, was the owner and driver of the other car. The testimony is undisputed that the defendant was on the wrong side of the road when the accident occurred and collided with plaintiff's car when it was at the extreme right side of its own lane. Harriet Marlowe sustained a whiplash injury and sued for personal injuries; her husband, Thomas Marlowe, sued for damage to his car, medical expenses, and loss of consortium.

When the suits were commenced they were based on ordinary negligence but plaintiffs later obtained leave to amend their complaints, which move was unopposed. The amended complaints alleged that at the time of the accident defendant drove his car carelessly, negligently, unlawfully, wantonly, and while under the influence of intoxicating liquor. An additional demand was made for punitive damages.

Defendant's counsel, in his jury argument, said:

"* * * This case originally started out on a different theory, and all the facts were gone into in regard to how the accident happened, and since then the plaintiff has changed the theory and we have admitted fault for the injuries and damages sustained by the Marlowes in this case."

In the course of his argument he also stated:

"Mr. Gunderson came up here to fish in your country, and there is evidence he bought liquor in your town, and then the accident occurred. The facts showed he was on the wrong side of the road at the time."

Defendant is appealing from orders denying his motion for a new trial on the issue of damages and he suggests that the record presents the following legal issues for consideration by this court:

"Whether it is misconduct for an attorney:

"a) To present evidence of defendant's liquor drinking which he

knows or should know will fail to prove intoxication on the part of defendant, but which is highly prejudicial to the defendant;

"b) After abandoning the claim of intoxication on the part of the defendant, to characterize him in his final argument as a 'drunk';

"c) In final argument, to ask the jury to put themselves in the place of a plaintiff for the purpose of assessing damages.

"Whether verdicts of $15,000 and $6,900 are excessive, where proof of pain and suffering following a whiplash injury depends almost entirely upon subjective symptoms, there is almost an entire absence of objective physical findings, and proven special damages amount to $2,522.85."

Plaintiffs' counsel in his argument to the jury said:

"* * * I call your attention to what has happened to these people. On a nice, October day in 1958, Mrs. Marlowe, then 40 years old and living up at the lake, and her neighbor, good Mrs. Bert Garrett, are coming to Brainerd; just two good women coming to town to do some shopping. They are driving along the River Drive, observing every rule of the road the law requires and doing everything the way it should be done, and a drunk comes around the corner on the wrong side of the road at high speed—"

There was an objection by defendant's counsel and a ruling by the court as follows:

"Mr. Hoppe: I object to that, Your Honor, and there is no proof of that, and there is no issue of that in this case.

"The Court: It is not an issue."

Extensive testimony showing that defendant and his passenger consumed considerable intoxicating liquor during the night and forenoon preceding the accident was received without objection and without any motion to have it stricken from the record. Plaintiffs called four police officers as witnesses, each of whom came to the scene of the accident shortly after it had occurred. Three testified to finding two bottles of liquor in defendant's car, one of them unopened. They testified to observing the smell of liquor both from defendant and his passenger. The defendant, when called for cross-examination as an

adverse party under the rules, admitted that upon leaving Minneapolis he and his passenger stopped at Anoka and bought a bottle of whisky; that they drank some of it on the way to the lake; that they arrived at their destination at 2 o'clock in the morning; but that they had stopped on the way up for sandwiches and a couple of drinks of whisky at Sartell and some more drinks at the V. F. W. in Little Falls. Since they found the resort they had chosen was closed, they went to sleep in the car. In the middle of the next morning they drove into Merrifield for their breakfast. They had a drink apiece from the bottle. Being out of whisky by this time, they drove to Brainerd for another bottle, stopping at the Ransford Hotel Bar where they each had three drinks of whisky. After about an hour spent at the hotel bar, they started back over the River Drive. Defendant testified:

"I just drove along and was sitting there talking, and the next thing I saw a car, and that's the last I remember."

Defendant contends that plaintiffs' counsel failed to ask the officers whether defendant exhibited the usual signs of intoxication or whether in their opinion he was under the influence of liquor. William Fitzsimmons, the first officer to arrive at the scene, testified that he found a fifth and a pint of whisky in the defendant's car; that defendant and his passenger had liquor on their breaths; and that later in the hospital he asked defendant if he had been drinking and that he said he had.

Plaintiffs' counsel did not ask for punitive damages in his argument to the jury nor did he again refer to liquor after defendant's counsel had objected to the characterization of defendant as a drunk. In his memorandum accompanying the order denying defendant's motion for a new trial, the trial judge stated that he did not believe that the claimed ground therefor based on misconduct of counsel truly existed in these cases, "let alone being so prejudicial as to warrant an order granting a new trial."

■ Recognizing the rule that in matters of this kind the evidence must be taken in the most favorable light to sustain the verdict, the trial court commented on defendant's contention that the verdicts were excessive as follows:

"The evidence of the medical witness produced by plaintiff showed that plaintiff was seriously injured and had a protracted hospitalization and recuperative period at home, still has not recovered fully and will have a permanent partial disability of her neck. Dr. Kanne who testified for defendant testified that she would have an 8½% permanent disability of her neck. Assuming that Dr. Kanne was right, and entirely ignoring Dr. O'Leary testimony, it would appear that the jury could very well have found that the verdict rendered by them was entirely within reasonable limits in view of the life expectancy of 26.72 years for plaintiff and the pain and suffering she had already endured. The jury saw the plaintiff on the stand, observed her condition, and heard her and the various witnesses testify. They were a sensible and level headed jury, and the court is satisfied that it should not disturb their verdict in this case."

It appears to us in reviewing the testimony that the nature and extent of Harriet Marlowe's injuries, the question of their permanence, the pain and suffering she had undergone up to the time of the trial, the probable future pain and suffering she might undergo, and other details of her claim were thoroughly explored in the course of the trial.

It is generally recognized that there is no fixed standard by which damages for personal injuries can be determined and even more so under present circumstances where the jury has to deal with a whiplash injury and can receive only limited aid from objective medical findings. While the verdicts depend upon subjective findings, we think the evidence is such that they are fairly arrived at and within reasonable limits in view of the life expectancy of Harriet Marlowe. We cannot ignore the fact that the verdicts were approved by the trial judge who had heard the evidence and had seen the plaintiff's condition at the trial. Under all these circumstances, while the verdicts may have been liberal, we cannot see upon the record as a whole that the verdicts were so excessive as to require a new trial. Clearly, no prejudicial error appears to have been committed in the court's rulings on the evidence. The rule as to the measure of damages in negligence cases is that one who commits a tort is liable for all the proximate consequences thereof. The test of the extent of liability is in causation

and not in probability or foreseeability. The measure of recovery in each damage case depends upon its particular facts. 5 Dunnell, Dig. (3 ed.) § 2570.

While the defendant contends that plaintiffs' counsel in his final argument to the jury in effect asked the jury to put themselves in plaintiffs' place for the purpose of assessing damages, defendant has failed to point out the specific words by which the jury was asked to do so. Under these circumstances, any charge of misconduct of counsel on that ground will not merit further attention.

With reference to the charge of misconduct on the part of plaintiffs' counsel in characterizing defendant as a "drunk," to which defendant immediately objected, it should be noted that the word was used only once. After admonishment by the court that it was no longer an issue, counsel wholly desisted from any further comment of that nature. That liquor was involved stands as an undisputed fact, so that mention of it could hardly have come as a surprise to the jury. Had counsel persisted in following that line of argument after warning from the court, we would have a somewhat different situation. Under all the circumstances we see no prejudicial effect on that ground.

As was said by this court in State v. Hass, 147 Minn. 269, 271, 180 N. W. 94, 95, and later quoted in James v. Chicago, St. P. M. & O. Ry. Co. 218 Minn. 333, 340, 16 N. W. (2d) 188, 192:

"* * * The jury is a part of the court in the administration of justice. It is not swayed by every imprudent or wrongful remark of counsel. We must credit it with exercising good judgment."

Evidently the trial court had similar thoughts here in making the statement that it is satisfied that it should not disturb the jury verdicts in these cases.

Whether there should be a new trial for misconduct of counsel rests almost entirely within the discretion of the trial court and its action will not be reversed on appeal except for a clear abuse of discretion. A new trial is granted on the ground of misconduct of counsel only to prevent a miscarriage of justice and not as a disciplinary measure. We think that rule clearly applies in the instant case. See, Bush v.

Havir, 253 Minn. 318, 91 N. W. (2d) 784; 14 Dunnell, Dig. (3 ed.) § 7102.

There is support in the record for the trial court's ruling in denying defendant's motion on the grounds that the verdicts of the jury were so excessive as to appear to have been given under the influence of passion and prejudice. See, Nelson v. Twin City Motor Bus Co. 239 Minn. 276, 58 N. W. (2d) 561. The court below was in a far better position than we are to determine whether the defendant had a fair trial. The charge of the court was fair and had the approval of counsel on both sides. We think the trial court's approval of the verdicts finds sufficient support in the record and entitles plaintiffs to an affirmance.

Affirmed.

MR. JUSTICE OTIS, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.