GARY COLGAN, A MINOR, BY JOHN COLGAN, INDIVIDUALLY AND AS FATHER AND NATURAL GUARDIAN, v. LAYTON RAYMOND.

146 N. W. (2d) 530.

October 28, 1966—No. 40,102.

*Moonan & Senn,* for appellant.
*Plunkett Law Office* and *Richard H. Plunkett,* for respondent.

MURPHY, JUSTICE.

This is an appeal from an order of the district court denying defendant's motion for a new trial. Appellant contends (1) that damages were given under the influence of passion and prejudice and are excessive; and (2) that the court erred in holding that certain arguments made to the jury by plaintiff's counsel were not prejudicial.

The action is brought by John Colgan to recover special damages, individually, and general damages for his minor son, Gary Colgan. The record establishes negligence on the part of the defendant, thus it is unnecessary to discuss the facts causing the injuries sustained by plaintiff except to state that he was injured while an occupant of an automobile which was struck from the rear by a vehicle driven by defendant.

Plaintiff when injured was 16 years of age and a high school student active in Boy Scout work, having attained the rank of Eagle Scout. Prior to the accident on Friday, September 29, 1961, he had been an active participant in many athletic sports. His activities following the

accident were restricted due to pain and lameness in his back. The day after the accident he experienced severe reactions, manifested by pain in his neck and back area. The following Monday he had to leave school because of extreme pain, whereupon X rays were taken at the Mayo Clinic. Although a course of therapeutic treatments gave him intermittent relief, his condition remains basically unchanged. He discontinued athletic activities and was excused from physical education courses in school but did make some unsuccessful attempts to engage in track and bowling. In the intervening vacation periods he did light work at a Scout camp and was employed as a "cleanup boy" doing light chores at the Mayo Clinic. During the summer preceding the trial he was employed in a canning factory, where he worked long hours but was never without pain. Plaintiff testified that when he was inactive the pain would be dull, but when physically active it would increase severely.

To relieve his pain the physicians prescribed aspirin and heat, and the plaintiff was sent to the Department of Physical Medicine for diathermy treatment at the Mayo Clinic. Thereafter, heat lamp treatments and massages were prescribed and administered. He was shown how to do spinal extension exercises and advised to begin sports activity cautiously. He slept with a board under the mattress and was given a "Spencer" back brace garment as a corrective measure. It was Dr. Joseph N. Janes' opinion at the trial that plaintiff "suffered an aggravation of a condition which was present in his midback, so-called juvenile epiphysitis, and I believe he suffered a ligamentous injury in the midlumbar region." There was some testimony that the pain might be eliminated by a spinal fusion operation, but this treatment was never recommended nor considered. The physician described epiphysitis as a "growth disturbance in the bodies of the vertebrae, the cause of which we do not know, which makes an irregularity of the vertebrae at the tip and at the bottom." He stated that this condition is symptomatic and "can produce discomfort. It seemed that in this case he had no discomfort before [the accident] in this area and he did afterwards. But I believe the changes in the bone were present at the time of the accident. Ligamentous injury is another word for sprain. A ligament is a structure that holds bones together, and those structures can be stretched or sometimes torn, and they

are productive of pain when this happens." The X rays definitely established the epiphysitis condition but would not show the ligamentous damage, at least not until calcification set in. The attending physician defined the ligamentous injury in the lumbar area as a sprain similar to the reactions experienced from a sprained ankle, and his opinion, based upon X-ray evidence and symptoms of pain at the seat of the injury, was that the plaintiff sustained a 10-percent permanent impairment of the spine "as a whole."

A jury verdict awarded plaintiff $10,000, of which approximately $450 were special damages. The verdict is attacked as excessive, defendant arguing that plaintiff's complaints are wholly subjective and unsupported by factual medical findings. The defendant relies on those authorities which have viewed as suspect large verdicts based on evidence of subjective symptoms described by an injured plaintiff.[1]

The defendant places reliance on Tanski v. Jackson, 269 Minn. 304, 130 N. W. (2d) 492, where, under somewhat similar circumstances, we held that an award of $10,500 to a young man who sustained a fracture of the vertebrae, as well as other minor injuries, but who had substantially recovered, was excessive by $2,500. A new trial was granted unless plaintiff consented to a remittitur. It should be noted in that case, however, that the medical testimony as to permanent disability was conditional or tentative. The doctor who attended the plaintiff there testified that the degree of disability would be from 10 to 15 percent, while his office records indicated that he had fully recovered without permanent disability. We pointed out that the trial court had the responsibility of granting a remittitur under circumstances where a verdict for damages was excessive. In that case, the accompanying memorandum of the trial court made no reference to the issue of damages, and we stated in granting a remittitur that we "reluctantly" acted without benefit of the trial

---

[1] Lowe v. Armour Packing Co. 148 Minn. 464, 182 N. W. 610; Gordon v. Land of Lakes Motor Co. 262 Minn. 97, 113 N. W. (2d) 576; Cameron v. Evans, 241 Minn. 200, 62 N. W. (2d) 793; Propper v. Chicago, R. I. & P. Ry. Co. 237 Minn. 386, 54 N. W. (2d) 840, 35 A. L. R. (2d) 459; Romano v. Dibbs, 256 Minn. 332, 98 N. W. (2d) 146; Tanski v. Jackson, 269 Minn. 304, 130 N. W. (2d) 492.

court's observations or impressions. We do not labor under that disadvantage in this case; we have the benefit of a carefully considered memorandum of the trial court in which the issue of damages is fully discussed and analyzed. In denying the defendant's motion, the trial court's memorandum reviewed the medical testimony as follows:

"(1) An examination of Dr. Clifford Janes' testimony—direct and cross—discloses the following:

"(A) Treatments and/or examinations at the clinic medical staff were on the following dates:

"1.   October 2, 1961 (injury September 29, 1961).

"2.   November 7, 1961.

"3.   November 16, 1961—Improvement noted. Heat lamp treatments prescribed.

"4.   February 17, 1962—(February 7, ? R.P. 159/19) Tenderness noted—pain still experienced.

"5.   February 24, 1962.

"6.   April 2, 1962—Spinal extension exercises prescribed.

"7.   June 1, 1962.

"8.   August 31, 1962—Spinal extension exercises again prescribed after having 'been at camp and sleeping on a soft bed.' Advised to refrain from football and cross country.

"9.   October 8, 1962—Spencer Garment prescribed. All phy. ed. curtailed except swimming.

"10.   May 20, 1963—phy. ed. curtailed again.

"11.   July 29, 1964—Spinal extension exercises again prescribed.

"12.   September 10, 1964—Excused from gym classes.

"(B) Therapy treatments at Clinic about eight times in addition.

"(C) Dr. Janes' diagnosis:

"1.   An aggravation of a pre-existing condition in mid back, so-called juvenile epiphysitis.

"2.   A ligamentous injury in the mid lumbar region.

"(D) Dr. Janes' opinion was that the aggravation of the epiphysitis as well as the injury to the ligament in the lumbar area were permanent leaving a ten (10%) percent impairment of the spine as a whole.

"(E) The X-rays disclose the pre-existing back condition of epiphysitis, which the doctor believes was aggravated; the X-rays diclose no other disability. 'Tenderness' was considered by Dr. Janes as not entirely a subjective symptom, it seems, and both he and Dr. Lipscomb noted such tenderness (the letter in February 7, 1961)."

Apparently both the trial court and the jury were convinced of the plaintiff's veracity. In his memorandum the trial court stated that the testimony of plaintiff persuaded the jury that his complaints were not feigned; that the jury could well be satisfied the pain and injuries were real and disabling and were actually sustained as a result of the accident; and that the back injuries would permanently persist, leaving 10-percent disability. He concluded that under the evidence of this case, a verdict of $10,000 was not excessive.

■■■■ The extent to which this court will review verdicts alleged to be excessive or inadequate has been discussed in numerous cases. In Cameron v. Evans, 241 Minn. 200, 62 N. W. (2d) 793, we pointed out that large verdicts should be closely scrutinized where the damages are based upon subjective symptoms only, but went on to say that that issue rests largely in the discretion of the trial court whose action will not be reversed on appeal unless it clearly appears that that discretion has been abused. Since there is no yardstick that can be applied to all cases, the peculiar facts of each case must serve as a measure of damages. We are controlled here by our decision in Marlowe v. Gunderson, 260 Minn. 115, 119, 109 N. W. (2d) 323, 326, where the plaintiff sustained a whiplash injury and it was asserted that damages were excessive. We said there:

"It is generally recognized that there is no fixed standard by which damages for personal injuries can be determined and even more so under present circumstances where the jury has to deal with a whiplash injury and can receive only limited aid from objective medical findings. While the verdicts depend upon subjective findings, we think the evidence is such that they are fairly arrived at and within reasonable limits in view of the life expectancy of Harriet Marlowe. We cannot ignore

the fact that the verdicts were approved by the trial judge who had heard the evidence and had seen the plaintiff's condition at the trial."

In the case before us it cannot be said that the verdict is based entirely upon subjective symptoms. The verdict is supported by competent medical opinion that the plaintiff's asserted pain is real and is related to an objective chronic condition and accounts for a degree of permanent disability. As we have said in many cases, we must be influenced by the fact that the trial court is in a much better position than are we to pass upon the question of whether a verdict is excessive or inadequate. Maas v. Midway Chevrolet Co. 219 Minn. 461, 18 N. W. (2d) 233, 158 A. L. R. 215; 1 Dunnell, Dig. (3 ed.) § 394; Thiesen v. Hellermann, 242 Minn. 218, 64 N. W. (2d) 762; Annotation, 29 A. L. R. (2d) 1201 to 1213; Zaikaner v. Small, 256 Minn. 275, 98 N. W. (2d) 247; McCormick v. Malecha, 266 Minn. 33, 122 N. W. (2d) 446; Clark v. Chicago & N. W. Ry. Co. 226 Minn. 375, 33 N. W. (2d) 484; Siemers v. United Benefit Life Ins. Co. 246 Minn. 459, 75 N. W. (2d) 605; Roeder v. North American Life Ins. Co. 259 Minn. 168, 106 N. W. (2d) 624; Kellett v. Wasnie, 261 Minn. 440, 112 N. W. (2d) 820.

■ The next point raised by defendant is that prejudicial error occurred in the argument to the jury by plaintiff's counsel. It appears from the record that plaintiff's counsel proposed the so-called "golden rule" argument to the jury that they might place themselves in the position of the plaintiff or his parents and award such damages as they would wish if they were in the same position. Arguments of this character have been disapproved and, in some cases, held to be reversible error. See, Wells v. Ann Arbor Ry. Co. 184 Mich. 1, 150 N. W. 340; Russell v. Chicago, R. I. & P. Ry. Co. 249 Iowa 664, 86 N. W. (2d) 843, 70 A. L. R. (2d) 927; Chicago & N. W. Ry. Co. v. Kelly (8 Cir.) 84 F. (2d) 569. An interesting and helpful discussion of this subject is found in Annotation, 70 A. L. R. (2d) 935. The trial court here did not consider the conduct complained of as prejudicial so as to warrant a new trial. Whether the trial court was correct must be viewed in the context of the record before us. After plaintiff's attorney concluded his argument, and before the jury was instructed, counsel for defendant made the following objection:

"* * * I take exception to the argument of counsel in which he used the expression 'if it was our son' or 'if it was your son,' I can't remember, and instruct the jury to disregard it. And the argument asking the jury what they would want, if they wanted $500 a year for these things, applying what they personally would want to go through with it. It's improper argument and should be disregarded by the jury."

The trial court agreed that this objection was valid and in his instructions to the jury said:

"Now you are advised, jurors, that you are not to put yourself in the position of either the plaintiff or the defendant. You are not to identify yourself with the plaintiff, with his injuries, or to identify your son with the injuries of the plaintiff. And by the same token you should not identify yourself or put yourself in the position of the defendant."

In his memorandum, considering the effects of the objectionable argument, the trial court said:

"* * * It is this Court's opinion the argument was objectionable particularly as it seemed to suggest that the jurors were to put themselves in the plaintiff's position—i.e. identify themselves with him. Upon re-reading the argument I note counsel used the pronoun 'you' and perhaps the reference could and should be construed not as 'you, the jurors,' but as a reference to the 'man-on-the-street,' so to speak. While objectionable, I believe the argument was not prejudicial; the corrective instruction given by the Court I think does correct any harm which might have occurred due to the plaintiff's attorney's argument."

It is well recognized by our decisions that whether there should be a new trial for misconduct of counsel rests almost entirely in the discretion of the trial court and its action will not be reversed on appeal except for a clear abuse of discretion. Patton v. Minneapolis St. Ry. Co. 247 Minn. 368, 77 N. W. (2d) 433, 58 A. L. R. (2d) 921; Harris v. Breezy Point Lodge, Inc. 238 Minn. 322, 56 N. W. (2d) 655; 14 Dunnell, Dig. (3 ed.) § 7102; Lott v. Davidson, 261 Minn. 130, 109 N. W. (2d) 336; Smith v. G. N. Ry. Co. 133 Minn. 192, 158 N. W. 46.

In considering asserted error, we again have the benefit of the trial

court's carefully considered views as to the bearing the improper argument may have had upon the outcome of the case. The jury was told to disregard the improper argument, not to permit considerations of sympathy to affect their judgment, and to base their verdict entirely upon the evidence adduced. From a review of the record and a full consideration of the circumstances surrounding the admitted improper argument, we cannot say that we would be warranted in holding that the trial court abused its discretion in denying the motion for a new trial.

Affirmed.

OTIS, JUSTICE (dissenting).

There is no evidence in this record that plaintiff will at any time require a fusion operation. Such procedure was neither contemplated nor recommended by any of the doctors. Indeed, his counsel acknowledged as much in the following colloquy:

"The Court: The doctor has not testified as to whether or not he has actually recommended that that [the fusion] be done in this case or not, is that right?

"Mr. Plunkett: No, your Honor, but this is a type of treatment for this particular type of injury."

Nevertheless, counsel repeatedly urged the jury to award damages for the pain and suffering which such an operation would entail. He argued, among other things, as follows:

"He went on to tell you that the only surgical treatment that could tend to alleviate these symptoms, and all it would do would be to tend to alleviate the pain, was an operation known as a *fusion*. Now in addition he said that after the *fusion* he would have an immobility of these vertebrae, third and fourth vertebrae. They would be *fused* together, just like a nail going through them. It means that that portion of your back doesn't bend any more." (Italics supplied.)

In discussing the impact plaintiff's injury would have on his employment prospects, counsel said to the jury:

"Now they [future employers] may say, 'Well now, what can be done to help this boy with the pain and so on?' He [plaintiff's doctor]

will have to tell them that the recommended surgical procedure is to *operate* on the lad and take the bone from his shin, (indicating), and cut him open in the back and put this bone in his third and fourth lumbar vertebrae and *fuse* it. They will say, 'Well, then, Doctor, you mean that he will have no more impairment and his spine will be as good as new?' And you heard Dr. Janes say that that would not be the case, that he would still have at least a ten percent impairment, because the bones are then *fused* and won't bend, but that it won't be so painful for him then when he has to move quickly, or lift something, or reach, and he won't become so lame as he has been on many occasions when he has tried to do these things." (Italics supplied.)

Later plaintiff again argued:

"* * * [T]he only thing that can be done to alleviate the pain in the lumbar spine is this *operation*.

"Now insofar as Gary is concerned, unless he has this *operation* to help relieve the pain, Dr. Janes testified his injury is permanent in the sense that it will continue on as it is, at least. It's permanent." (Italics supplied.)

Not content with these wholly unjustified references to the need for a fusion operation, plaintiff concluded by saying:

"Now as far as Gary is concerned, without this *fusion,* as Dr. Janes pointed out, this lad is going to have pain in his back.

\* \* \* \* \*

"* * * But remember that he can't come back to you. In five years, if the *spinal fusion* is performed—and this is a major *operation,* and those of us who are acquainted with it all know that it's very serious *surgery* —if something should go wrong, he won't be able to come back and say, 'Well, folks, we didn't take that into account in asking you for a verdict.'" (Italics supplied.)

While defendant did not specifically except to this line of argument, four previous objections to testimony describing such fusion procedures had been overruled and were assigned as grounds for a new trial.

To compound his error, counsel in arguing damages placed the following price tag on plaintiff's right to lead a normal life:

"* * * Would it be worth $500 a year to you for one year? * * * You wouldn't sell it for anything."

To this argument defendant took exception. The trial court in its memorandum and the majority opinion acknowledge its impropriety.

Finally, without any support in the record and subject to defendant's objection, the court charged the jury that plaintiff could recover for impaired earning capacity. Counsel in his argument suggested that plaintiff could normally be expected to earn $210,000 in his lifetime and that the 10-percent permanent partial back injury to which his doctor testified justified an award of $21,000 for this element of damages alone. This the court permitted notwithstanding the total absence of any testimony correlating the disability and the claimed impairment of earning capacity.

This case deals with a rear-end collision from which plaintiff unquestionably suffered an injury. Nevertheless, he had no serious immediate symptoms and those he ultimately experienced were largely subjective. He took part in a high school football celebration from the time of the accident at 3:30 in the afternoon until 10:30 that evening. Thereafter he successfully finished his school year, worked the following summer as a swimming instructor in a boys' camp, and later drove to California and back uneventfully.

Under all these circumstances I submit that the verdict is so tainted by counsel's invitation to consider prejudicial matters, wholly extraneous to the record, that only a new trial on damages can correct it. To hold otherwise is to permit plaintiff to profit from tactics which both the trial court and this court have condemned as unfair.