## ROBERT BOSSONS v. THE HERTZ CORPORATION. FORD MOTOR COMPANY, THIRD-PARTY DEFENDANT.

176 N. W. (2d) 882.

April 24, 1970—No. 41797.

*Robins, Davis & Lyons* and *John T. Chapman,* for appellant.

*Meagher, Geer, Markham & Anderson, Mary Jeanne Coyne, O. C. Adamson II,* and *William D. Flaskamp,* for respondent Bossons.

*Jardine, Logan & O'Brien* and *Jerre F. Logan,* for respondent Ford Motor Company.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Theodore B. Knudson, JJ.

NELSON, JUSTICE.

Appeal from an order of the district court denying defendant's motion for judgment notwithstanding the verdict or for a new trial.

This action was brought by Robert Bossons to recover for personal injuries he sustained in an accident which occurred on

March 24, 1965. At the time of the accident, plaintiff, a football coach in the employ of the University of Minnesota, was engaged in an athletic recruiting trip. Upon his arrival at Chicago's O'Hare Field, he rented a year-old Ford Thunderbird automobile from defendant, The Hertz Corporation.

Upon locating the automobile, Bossons attempted to start the car while the gear lever was in the "park" position, but was unsuccessful. He pushed the gear lever further to the left to set it more securely in the "park" position and it still would not start. Finally, he moved the gear shift to "neutral" and started the automobile without difficulty.

Plaintiff first drove to the Sheraton Motel. He testified that while at the motel he had difficulty putting the gear lever in the "park" position and that he had to keep forcing it to the left. He could not recall whether, upon leaving the motel, he had difficulty starting the car. He then drove to LaGrange, Illinois, where he stopped at a Howard Johnson Motel for a cup of coffee. Again, he experienced difficulty starting the car. It would not start while the gear lever was in the "park" position, only when in neutral.

Although the car would not start when the indicator on the gear lever pointed to "park," plaintiff experienced no movement or rolling of the car while attempting to start it. At no time prior to the accident did plaintiff notify Hertz or one of its representatives of the difficulties he was experiencing, even though he realized he was having problems.

Intending to drive to the LaGrange High School, plaintiff stopped at a Standard Oil station on the corner of LaGrange Road and Ogden Avenue to ask directions. At the station plaintiff moved the gear lever to a point where it indicated it was in the "park" position. He left the engine running and got out of the car without applying the emergency brake. At the time he took his foot off the brake, the automobile remained stationary. However, after he began walking toward the station and was in front of the car, he noticed the car was moving backwards

down a gradual incline toward LaGrange Road. Thinking the car would roll into the street, plaintiff began running after the car, intending to stop it. He caught up with the car as it was moving, opened the door, and grabbed the steering wheel, attempting to put the gear lever into "park." At that instant, his shoulder hit the gasoline pump, and he was twisted out of the car and thrown to the ground. However, his leg was caught between the door and the gasoline pump, and he felt his leg crack. The automobile finally came to a stop against the gasoline pumps.

After the accident, James Morale, a Hertz representative who operated a service station across the street from the Standard Oil station, noticed that a Hertz car was involved in the accident and went to the Standard station to investigate. When an ambulance had taken plaintiff to the hospital, Morale and two Standard station attendants, Henry Koop and his son, performed certain tests on the Thunderbird. If heavy pressure was placed on the gear lever so that it was moved to the left beyond the "park" position, it would not jar loose and the car could not be moved. Koop testified that when the lever indicated "park," however, it would come out of the parking gear into "reverse" if the motor was running. Morale then removed the Thunderbird to his station and performed two additional tests on the automobile. He testified that in each of these tests the car was placed on an incline and it did not move when the gear lever was in the "park" position.

After this action was commenced, Hertz instituted a third-party action against Ford Motor Company, the manufacturer of the Thunderbird. The district court set the date for trial and made an order, based on Ford's motion, that the third-party action be severed. The case was not tried on the original date, and eventually, pursuant to order of the district court, plaintiff amended his complaint to include Ford in the main action.

On the date set for trial, but prior to the jury selection or the taking of testimony, counsel for Hertz notified the court that

an expert witness was prepared to testify on behalf of Hertz with regard to a design defect in the Thunderbird in support of Hertz' third-party action. This testimony was wholly unexpected and objected to by Ford, whose counsel had previously received an unanswered interrogatory concerning the maintenance history of the Thunderbird. The following day the court advised counsel that it intended to allow the expert to testify despite Ford's surprise. Counsel for Hertz then moved to sever the third-party action and said that if Ford continued to be a defendant in the main action, Hertz would not produce expert testimony. At this point, counsel for plaintiff dismissed his action with prejudice against Ford. The court then denied the motion for severance of the third-party action between Hertz and Ford, and the evidence of defective design was not introduced by Hertz.

On the last day of trial, upon Ford's motion the court dismissed with prejudice Hertz' third-party action for contribution or indemnity on the basis of lack of evidence of fault on the part of Ford. The trial court then instructed the jury, including an instruction on res ipsa loquitur. A request by counsel for Hertz for an instruction on assumption of risk was denied. The jury awarded damages to plaintiff in the amount of $31,840.70.

The issues involved on this appeal are: (1) Did the trial court err in instructing the jury on res ipsa loquitur? (2) Was the trial court in error in refusing to instruct on assumption of risk? (3) Was the closing argument by counsel for plaintiff improper and prejudicial? (4) Was the award of damages excessive due to passion and prejudice so as to require a new trial?

■   The following conditions are necessary for the application of the doctrine of res ipsa loquitur: First, the event must be of a kind which ordinarily does not occur in the absence of negligence; second, it must be caused by an agency or instrumentality within the exclusive control of the defendant; and third, it must not have been due to any voluntary action or contribution on the part of the plaintiff. Johnson v. West Fargo Mfg. Co. 255 Minn.

19, 95 N. W. (2d) 497; Johnson v. Coca Cola Bottling Co. 235 Minn. 471, 51 N. W. (2d) 573; Prosser, Torts (3 ed.) § 39.

The doctrine represents nothing more than a form of circumstantial evidence from which an inference of negligence may be drawn. Heffter v. Northern States Power Co. 173 Minn. 215, 217 N. W. 102; Johnson v. Coca Cola Bottling Co. *supra;* Barnes v. Northwest Airlines, Inc. 233 Minn. 410, 47 N. W. (2d) 180; Rule 43.06, Rules of Civil Procedure. The jury is permitted, not compelled, to make the inference.

■ Whether the doctrine of res ipsa loquitur should have been submitted in the instant case is debatable. This court has held that the doctrine is inapplicable if the accident may reasonably be attributable to one or more causes for which defendant is not responsible. Boutang v. Twin City Motor Bus Co. 248 Minn. 240, 80 N. W. (2d) 30; Lovejoy v. Minneapolis-Moline Power Imp. Co. 248 Minn. 319, 79 N. W. (2d) 688. See, also, Clarkson v. Hertz Corp. (5 Cir.) 266 F. (2d) 948. Defendant contends that plaintiff may have been responsible for the accident. There is also a possibility that a latent defect in the automobile was the cause of the accident. In that event, the problem would not have been reasonably discoverable by defendant.

■ Thus, since the second essential of res ipsa loquitur possibly was not present, it may have been error to charge the jury on res ipsa loquitur. We must therefore inquire whether Hertz was prejudiced by the trial court's instruction on res ipsa loquitur.

The trial judge explained the doctrine as follows:

"Now, when an accident is such that it would not ordinarily have happened unless someone was negligent, and if the thing which caused the accident is shown to have been under the exclusive control of the Defendant, that is, the Hertz Corporation, at a time which I will discuss with you a moment later, then you are permitted to infer from the mere fact that the accident happened and the circumstances surrounding it that the Defendant was negligent.

"Before you are permitted to make this inference, you must find, first, that the Plaintiff suffered injuries to, in this case, to his person; and second, that the accident was of a kind which ordinarily does not happen unless someone is negligent; and third, that the car in this case was in the exclusive control of the Defendant, that is, the Hertz Corporation at the time that the negligent act, if any, must have happened. This will be the sort of act that will be defined for you at a little greater length later on in these instructions. And fourth, that if the car in this case passes from the Hertz's control, that its condition was not changed by any improper use or handling on the part of Mr. Bossons or anyone else. And fifth, that the injury or the condition resulting in the injury was not due to the conduct of the Plaintiff or some third person.

"If you should find that Mr. Bossons has established all of the above, then you are permitted but you are not required to draw an inference that the Hertz Corporation was negligent.

"When I say that you must find that control was in the Defendant, that is, the Hertz Corporation in this case, it is sufficient if you find that the Defendant had, at the appropriate time, the right of control and the opportunity to exercise it over this car, which is involved in this particular lawsuit."

The trial judge instructed on all aspects of negligence. After providing the jury with a proper explanation of the concept of negligence, the court continued as follows:

"Now, one who is engaged in the business of letting or leasing out automobiles for hire, like the Hertz Corporation in this case, does not by that fact alone become an insurer of the absolute integrity of the automobile involved; but he must exercise reasonable diligence to know the condition of his cars before he lets them out. Again, one who rents or leases a motor vehicle, such as Hertz did in this case, to another, must exercise that degree of care and skill in the selection of the car which he sends out, which a prudent man, having regard to the circumstances of the

occasion, would bestow on the matter. He is liable for injuries or damages not only resulting from those defects about which he knows, but he is also liable for those which he could have discovered in the exercise of reasonable care, to see that the vehicle is reasonably, or was reasonably safe for use, and to discover defects in it, even where he has no actual knowledge of the presence of a defect or knowledge of facts which would indicate the presence of a defect.

"The supplier or a renter of cars, such as Hertz here, has a duty to use reasonable care to inspect the car to protect others who are going to use it from any unreasonable risk or harm while the car is being used for their intended purpose. And a supplier of cars, again, a renter or lessor of cars has a duty to give a reasonable warning as to any dangers which are inherent to him or reasonably foreseeable in using the car in the manner specified.

"Now you will consider whether the Defendant, the Hertz Corporation was negligent and, if so, whether that negligence was a proximate cause of any injuries suffered by Mr. Bossons. If you should find that the Hertz Corporation was not negligent, or if you find that it was negligent, but that its negligence was not a direct or a proximate cause of any injury to Mr. Bossons, then Mr. Bossons is not entitled to recover. However, if you should find that the Defendant, the Hertz Corporation, was negligent, and that its negligence was a proximate cause of the injuries suffered by Mr. Bossons, then Mr. Bossons is entitled to recover, unless he was himself guilty of some negligence which proximately contributed to cause his accident. If you should find that Mr. Bossons was negligent, and that his negligence contributed as a proximate cause of his own accident and the injury, then he would not be entitled to recover.

"On the other hand, if you should find that Hertz was negligent, and that its negligence was a proximate cause of Mr. Bossons' injury, and if you also find that he was not negligent or if he was, his negligence did not proximately contribute to cause

his accident, then Mr. Bossons would be entitled to recover, and you would come to and consider the issue of damages."

Under the circumstances, we do not feel that the instructions on res ipsa loquitur misled the jury. They had sufficient evidence before them, which, coupled with a correct and thorough set of instructions regarding the law of negligence, enabled them to return a just verdict in fulfillment of their proper function. We therefore hold that the trial court did not commit prejudicial and reversible error when it charged the jury on the doctrine of res ipsa loquitur. In the context of the entire charge, the specific instruction on res ipsa loquitur became a mere statement of an abstract principle of law, even though arguably not pertinent to the case, for which reversal is not justified. As given, it may well be classified as harmless error.

■ Defendant contends the trial court erred in refusing to instruct on assumption of risk. We find no merit in this contention. Assumption of risk was not presented in the pleadings nor was it brought into evidence.[1] At most, evidence was adduced at trial which placed the issue of contributory negligence before the jury. It is clear from the jury's finding of liability on the part of Hertz that the evidence was not sufficient to sustain a finding of contributory negligence. Charging on assumption of risk would have introduced an issue which was not present in the case and would have been error. Hill v. N. P. Ry. Co. 210 Minn. 190, 297 N. W. 627.

■ Counsel for Hertz at the opening of his summation told the jury that he and counsel for plaintiff were not impartial persons, that they were advocates who believed their positions in the lawsuit were correct, and he told the jury what a fine fellow he thought plaintiff to be.

---

[1] There is no evidence in the record that plaintiff knew or even suspected that when the gear shift lever indicator pointed to "park" there was a risk that the lever would move into reverse gear without human intervention.

In response, counsel for plaintiff admitted that he was indeed biased in his client's favor because plaintiff and he were long-time friends, and that he had never had a case since he got out of law school in 1951 which he wanted more to win. Counsel went on to say that "we don't intend to win this lawsuit on sympathy or bias. It's won by the witnesses that testified here before you, or lost by the witnesses that testified here before you."

At the close of plaintiff's argument defendant requested a corrective instruction, which the court refused to give, for the reason that it did not consider the argument highly improper or likely to influence the result. Defendant apparently agreed with that view and there was no request for a mistrial.

This court has heretofore indicated that counsel, when arguing to the jury, is entitled to present his case fully and his efforts are not to be crippled by compelling him to run a course of technical obstacles. Connolly v. The Nicollet Hotel, 258 Minn. 405, 104 N. W. (2d) 721.

Clearly, the trial court considered the alleged erroneous argument so harmless that it did not warrant a corrective instruction. It undoubtedly took the view that a jury is not swayed by every imprudent or wrongful remark of counsel and is entitled to be credited with appropriately exercising good judgment. Marlowe v. Gunderson, 260 Minn. 115, 109 N. W. (2d) 323.

■ While defendant contends that the jury's award to plaintiff of $31,840.70 is "grossly excessive" and "shocking" due to being motivated by "passion and prejudice," defendant does not offer any objective basis for its assertion. Defendant does not even attempt to characterize any aspect of the trial or the final argument as inflammatory or as tending to arouse the passions or prejudices of the jury, nor does it accuse plaintiff of engaging in any tactic calculated to elicit the pity or sympathy of the jury. Its allegations are wholly in the abstract. Although the statement of the principle advanced by defendant may be accurate, it has no application to this case, which, viewing the record as a whole, is free from misconduct, passion, or prejudice.

We think it sufficient to point out that plaintiff sustained a compound fracture of his left leg, which had to be encased in a long plaster cast. Plaintiff attempted to carry on his position as a football coach at the University of Minnesota on crutches for about three months. He spent two more months in a steel and leather brace, and it was more than six months after the accident before he discarded his cane. His leg is atrophied and is extremely sensitive to touch in the area of the scar. He has a 10- to 15-percent permanent disability of his left leg. His disability has affected his occupation to the extent that he cannot demonstrate football techniques as well as previously because he cannot run as well and cannot start or stop on his left leg. His work requires him to spend a great deal of time on his feet, and running or being on his feet for any length of time causes his leg to swell.

The evidence of damages which plaintiff introduced was uncontroverted. It is our view that the jury was justified in setting the monetary equivalent of those damages as it did. We conclude that the trial court was within its discretion in affirming the jury's determination in awarding damages. The verdict finds ample support in the evidence and should be affirmed.

Affirmed.