Timothy OMLID, Respondent,

v.

Kent LEE, et al., defendants and third party plaintiffs, Appellants,

v.

Anthony SIPE, Special Administrator of the Estate of Sheila Fay Fisher, deceased, Third Party Defendant.

No. C4–86–337.

Court of Appeals of Minnesota.

July 29, 1986.

Donald R. Becker, Fargo, N.D., for respondent.

Steven J. Cahill, Cahill, Jeffries & Maring, Moorhead, for appellants.

Heard, considered and decided by CRIPPEN, P.J., and LESLIE and NIERENGARTEN, JJ.

## OPINION

LESLIE, Judge.

Defendant appeals claiming the jury's verdict was excessive, respondent's counsel made improper argument, and that surprise testimony mandates a new trial. We affirm.

## FACTS

On December 14, 1980, respondent Timothy Omlid, then age 18, spent the evening drinking at a bar with some friends. He left the bar late that night with his friend, appellant Kent Lee, who agreed to drive Omlid home. At about 3:00 a.m., Sheila Fischer asked Lee for directions to Fargo. Lee offered to lead her part of the way. During this trip, Lee slowed down or stopped on the highway and Fischer's car collided with the rear of Lee's car. The impact of the collision threw Omlid into the dashboard, causing severe facial injuries. Fischer died as a result of the accident.

Omlid was hospitalized for ten days in December. He was initially placed in intensive care to allow his injuries to stabilize. An operation was performed to reduce numerous midface fractures and wire his nose into place. He was released from the hospital and readmitted shortly thereafter for five days. Another operation was performed, during which time the doctor operated on the area surrounding Omlid's left eye.

In July 1982, Omlid was involved in another accident. Omlid is paralyzed and confined to a wheelchair as a result of this second accident.

Omlid brought suit against Lee, who in turn brought Fischer's estate into the action. Omlid asked only for general damages and did not seek damages for past or future medical expenses.

During the trial, substantial evidence was presented concerning Omlid's injuries. Dr. James L. Frisk, an ear, nose and throat specialist who operated on Omlid, testified that Omlid received numerous lacerations in the face, and the whole center portion of his face essentially broke off, with fractures to the nose, the sinus area, and a blow out fracture of the bones around Omlid's left eye. Dr. Frisk described the two operations he performed and testified that Omlid has permanently lost his sense of smell as a result of the injuries. Dr. Frisk also testified that as a result of the injuries around Omlid's eyes, Omlid has diplopia, or

double vision. He testified that this is permanent.

Dr. John Goff, an opthalmologist who examined Omlid after the accident, testified that the bones around Omlid's eyes were fractured. Although each eye had normal vision, the eyes did not move together, and Dr. Goff noted that Omlid had double vision when he looked ten to fifteen degrees off center. As a result of the double vision, Omlid would have depth perception problems, difficulty reading and driving, and would have problems with many everyday activities. He testified this condition was permanent.

Omlid testified concerning his injuries. He stated that his whole head hurt when he was first in the hospital. He had a large gash on the back side of his head and he could not see out of his left eye because of the severe swelling. He was worried that he would be permanently blind in the left eye. He testified that he had double vision and he had a difficult time adjusting to it. He stated he initially had a great deal of difficulty driving his car and, although he has adjusted somewhat, he still has difficulty driving. He can only read for thirty to forty-five minutes before he develops severe headaches. He gets dizzy. He notices one eye is sunken more than the other eye and is embarrassed about this and the scars. He has sinus problems, with a runny nose and frequent sinus headaches. His complete loss of smell worries him at times because he cannot smell smoke or gas or other danger signs.

The jury found Lee twenty-five percent at fault and Fischer seventy-five percent at fault. The jury awarded Omlid general damages of 350,000, with no award for lost future earning capacity. Lee moved the court for a new trial or remittitur. The motion was denied, and Lee appeals.

### ISSUES

1. Was the jury's damage award excessive?

2. Does a comment made by respondent's counsel during closing argument justify granting a new trial?

3. Should appellant be granted a new trial on the basis of surprising trial testimony by respondent?

### ANALYSIS

1. Appellant contends that the jury's award of $350,000 is excessive. Appellant claims the jury consciously or subconsciously compensated respondent for his paraplegia from the subsequent accident. Appellant relies extensively on jury verdicts from other cases with similar injuries. From these cases, appellant argues respondent's injuries are really worth between $50,000 and $165,000. *See* Annot., 16 A.L.R.4th 1127 (1982). Appellant compares these awards with awards in cases involving paraplegia, which appellant contends is worth between $250,000 and $600,000. *See* Annot., 15 A.L.R. 4th 294 (1982). Because the jury's award is more consistent with damage awards for paraplegia, appellant claims the award must have resulted from passion or prejudice stemming from his more serious subsequent injury.

We disagree. The decision to set aside a verdict as being excessive is generally left to the discretion of the trial court. *Kinikin v. Heupel,* 305 N.W.2d 589, 596 (Minn.1981). Furthermore, a verdict generally should not be justified or attacked by comparing it with verdicts from other cases. *See Moteberg v. Johnson,* 297 Minn. 28, 34, 210 N.W.2d 27, 31 (1973); *Brabeck v. Chicago & Northwestern Railway Co.,* 264 Minn. 160, 165, 117 N.W.2d 921, 925 (1962); *DeRemer v. Pacific Intermountain Express Co.,* 353 N.W.2d 694, 699 (Minn.Ct.App.1984). When judging the size of a verdict, considerations may include past and future pain, permanent disabilities, life expectancy, inability to follow one's usual occupation, and the inflationary trend of the economy. *Stenzel v. Bach,* 295 Minn. 257, 261, 203 N.W.2d 819, 822 (1973).

Respondent's injuries were very extreme as numerous bones in his face were broken. He suffered great physical and

emotional pain while in the hospital and after he was released. Respondent was only eighteen years old when he was injured, and he could easily live for fifty or more years. He will spend all of those years with the headaches and dizziness caused by his double vision. The double vision will genuinely limit the activities in which respondent can participate. Respondent will suffer innumerable sinus headaches and will never be able to smell anything. Furthermore, the jury was instructed on numerous occasions not to consider respondent's paraplegia in determining damages. Because respondent's injuries were severe and the jury was repeatedly instructed not to consider respondent's paraplegia, this court will not disturb the jury's award.

■ 2. Appellant also contends a new trial should be granted because respondent's counsel made improper statements during final argument. During closing argument, respondent's counsel asked the jury for what amount they would sell their sense of smell or eyesight. This "golden rule" argument is improper and has been held to be reversible error in some cases. *Colgan v. Raymond,* 275 Minn. 219, 225, 146 N.W.2d 530, 534 (1966).

■ A new trial is not mandated because of this comment, however. When respondent's counsel made this statement, appellant's counsel immediately objected and the trial court sustained the objection, later giving a curative instruction to the jury. When an objection is made to improper arguments and the trial court gives a curative instruction, a new trial should not be granted on appeal unless the misconduct was extremely prejudicial. *See Hake v. Soo Line Railway Co.,* 258 N.W.2d 576, 582 (Minn.1977). Respondent's counsel's statement was not so damaging that a new trial should be granted.

■ 3. Appellant next contends he should be granted a new trial based on surprise testimony by respondent. Respondent had earlier stated he had no recollection of the events leading up to the accident. At trial, however, respondent testified he recalled numerous events, including some events that showed he may have been contributorily negligent. Because this evidence was surprise evidence, appellant contends he did not have a chance to properly present evidence concerning respondent's contributory negligence.

Appellant sought no continuance and failed to submit proposed instructions concerning contributory negligence or assumption of risk. This could be considered a waiver of his right to raise this argument on appeal. *See State, ex rel. Pula v. Beehler,* 364 N.W.2d 860, 862 (Minn.Ct.App. 1985), *pet. for rev. denied,* (Minn. June 4, 1985). Moreover, granting a new trial on the basis of surprise testimony is a matter largely within the discretion of the trial court. *Sward v. Nash,* 230 Minn. 100, 109, 40 N.W.2d 828, 833 (1950). Because the parties all knew that Lee was intoxicated and appellant's counsel had an opportunity to impeach respondent's sudden recollection of the events of the night, the trial court did not abuse its discretion in failing to grant a new trial on the basis of the surprise testimony.

### DECISION

The jury's verdict is not excessive and a new trial is not warranted based on respondent's counsel's inappropriate argument or because of surprise testimony.

Affirmed.