# ANGELINE JANGULA AND ANOTHER v. CLYDE KLOCEK AND ANOTHER.

170 N. W. (2d) 587.

September 12, 1969—No. 41353.

*Schermer, Gensler, Schwappach, Borkon & Ramstead* and *Irvin E. Schermer,* for appellants.

*Mott, Grose & Von Holtum* and *Clint Grose,* for respondents.

Heard before Nelson, Murphy, Otis, Rogosheske, and Frank T. Gallagher, JJ.

NELSON, JUSTICE.

This is an appeal by defendants from a judgment of the Hennepin County District Court. Plaintiffs, through filing notice of review pursuant to Rule 106, Rules of Civil Appellate Procedure, seek review of the judgment and of an order denying defendants' motion for a new trial conditional on remittitur.

The issues presented for review are unique. The action arose out of an automobile accident occurring December 25, 1963, at Minneapolis, Minnesota. Plaintiffs, Angeline Jangula and Benard Jangula, wife and husband, sought to recover damages allegedly sustained by them as a result of said accident. Angeline claimed as her principal injury the herniation of a lumbar disc for which surgery was performed. Benard sought recovery for the damage to his automobile, for his wife's medical expenses, and consequential damages.

A significant issue at trial was whether Angeline's back injury was in fact a result of the accident. The jury returned a verdict in the sum of $219.15, the amount of Benard's automobile repair bill.

The accident occurred on 32nd Avenue South between 43rd and 44th Streets in Minneapolis. Benard was driving his automobile in a southerly direction, and defendant Lucille Daisy Klocek was driving an automobile belonging to her husband, defendant Clyde Klocek, north. The roadway was slippery and was narrow because of cars and plowed snow. As Mrs. Klocek's automobile passed alongside plaintiffs' car, the left rear fender struck the left front of plaintiffs' vehicle, causing damage thereto in the amount of $219.15. Mrs. Klocek's speed at impact was estimated at 35 miles per hour. She admitted to an investigating officer a speed of 30 miles per hour, and the collision made a noise loud enough to be heard in a home several doors from where it occurred.

Angeline was stunned by the collision and she had no recollection of what had occurred after seeing defendants' automobile coming at her until she woke up on a chair in her mother-in-law's

home, which was near the scene of the accident. Angeline suffered pain, headaches, low backache, and shoulder stiffness. She was seen at Glen Lake Sanitarium by Dr. Wen Yao Yue and his assistant, Dr. Kajekura. (A tuberculosis patient there since October 1, 1963, she had been released to visit her family on Christmas Day.) On examination there was found to be tenderness in the back of her neck, pain in her lower back, and a bluish bruising of her body in the right kidney region. Angeline was given analgesics and pain pills, and a heating pad was later applied to the lumbar region of her spine. She improved while in the sanitarium but complained of intermittent pain in the back of her head and in the lumbar region.

Angeline was discharged from Glen Lake in March 1964, and saw Dr. Robert Olson, to whom she made similar complaints. He found that she had muscle spasm in the muscles of the lumbar spine and the neck. Dr. Olson treated her with analgesics for pain, muscle relaxants, and physiothereapy. Her symptoms still progressed. She was referred to Dr. Elmer Salovich, an orthopedic specialist, in September 1964. She made similar complaints, and Dr. Salovich referred her to a neurologist, Dr. Robert C. Stoltz, in December 1964. An electro-encephalogram then taken showed some abnormal discharge from Angeline's brain on hyperventilation, and Dr. Stoltz diagnosed a brain concussion. Dr. Stoltz considered her brain injury serious and felt that the injury and the subsequent symptoms of headaches and dizziness were permanent.

In 1965 Angeline started complaining of severe pain in her lower back and down the right and left thighs. She was admitted to St. Mary's Hospital, where it was found that she had definite nerve root irritation. A spinogram was done, which disclosed a large herniated disc, central in location, between the fourth and fifth lumbar vertebrae. In April 1965 Dr. Salovich performed a laminectomy, removing a portion of the bone of the fifth lumbar vertebra, pulling the spinal cord to the side, and removing the disc. Angeline continued to have more symptoms than

a patient who has had surgery for a herniated disc normally has. During the year following her surgery an inflammatory process developed between the fourth and fifth lumbar vertebrae. There was testimony that her back condition will exist for the rest of her life and that the injury is definitely a permanent one.

Plaintiffs moved for a new trial after the verdict at the first trial, claiming "[m]isconduct of the prevailing party by way of the introduction of certain evidence which was declared immaterial and irrelevant, but which evidence upon being heard by the jury, prejudice[d] the Plaintiffs herein, which prejudice was obviously not corrected by the ruling and instructions of the Court."

The trial court granted the motion for a new trial on the issue of damages only on the above quoted ground in an order dated March 27, 1967, stating in a memorandum made a part of the order:

"Parties to a lawsuit are entitled to have the issues determined in an atmosphere that is free from passion or prejudice. The trial of this case was not. Accordingly, a new trial is granted."

See, Rule 59.01, Rules of Civil Procedure. Defendants thereafter filed a motion, supported by affidavit of counsel, to vacate the order granting the motion for a new trial. The trial court conceded that the affidavit was accurate in part, but denied the motion.

Following the new trial on damages only, the jury returned verdicts on October 17, 1967, of $18,000 for Angeline and $5,219.15 for Benard. Defendants moved for a new trial, alleging, among other things, that the damages awarded were excessive. The motion was denied upon the condition that plaintiffs agree to a remittitur reducing their damages in total to $14,000 within 30 days of the order entered. Plaintiffs consented to the reduction within the 30-day period, and pursuant to the verdicts and the consent of plaintiffs to the reduction, judg-

ment was entered March 1, 1968. It is from this judgment that defendants appeal.

■ Defendants contend that the court erred in granting plaintiffs' motion for a new trial after the first trial. They also contend that the order may be reviewed on their appeal from the judgment. Their position is correct, since upon an appeal from a judgment this court may review any intermediate order involving the merits or necessarily affecting the judgment. See, 1 Dunnell, Dig. (3 ed.) § 389.

Therefore, the first issue to be decided on defendants' appeal is whether the trial court at the first trial erred in granting a new trial on the ground of defendants' misconduct. In a memorandum made a part of his order granting a new trial as to damages, the trial court outlined the aspects of the trial which persuaded its decision to grant a new trial:

"Plaintiffs were married in Japan while Benard Jangula was a member of the Armed Services. Plaintiff Angeline is Japanese. Angeline had not been married before but at the time of the marriage she was the mother of a baby girl, now Shirley Jangula, about 16 years of age. Shirley was present in the courtroom during the trial and appeared as a witness. During Shirley's presence the fact of her illegitimacy was brought out by counsel for defendants during his cross examination of Benard Jangula. Although the jury was instructed to disregard the matter, it could not be erased from their minds. While it is difficult to evaluate the effect on the jury of this disclosure, especially because of the mixed marriage, it is quite obvious from the verdict that the disclosure did not result in a reaction that was favorable to plaintiffs.

"The trial was hotly contested. The very competent counsel for defendants made the most of every opportunity that was presented to him. Two other matters occurred that may have prejudiced the jury against one or both of the defendants [sic]. Some time after the accident Angeline was hospitalized because while

depressed she had taken an overdose of sleeping pills. * * * [This fact] was disclosed and the hospital records relating thereto were offered with the rest. These records contained a nurse's note with the nurse's diagnosis that Angeline had cigarette burns on her body at the time of admission. While this had no real bearing on any issue in the case, defendants' counsel accepted the nurse's diagnosis and made comments relative to the claimed cigarette burns adversely affecting plaintiffs during the course of closing argument."

Defendants argue that soliciting information about the child's illegitimacy did not constitute prejudicial error and that, if it were improper, it was invited by plaintiffs' conduct in having their children present at the trial. Defendants claim that the purpose of so doing was to create sympathy for plaintiffs and that it "constituted unprofessional trial tactics." It appears that some of the children were present to testify as to their mother's condition after the accident, and in any event their presence could hardly justify defense counsel's elicitation of a fact which was both irrelevant and very likely prejudicial. Even if prior misconduct of opposing counsel were clearly shown, defendants' duty would have been to protect their record against possible impropriety of opposing counsel at the time it occurred and not to use it to justify a later "retaliation" on their part.

■ The main question before this court raised by defendants' appeal is whether the trial court's granting of the new trial constituted an abuse of discretion. The matter of granting a new trial for misconduct of counsel or the prevailing party is governed by no fixed rules but rests almost entirely in the discretion of the trial court, and its action will not be reversed on appeal except for a clear abuse thereof. State v. Becker, 231 Minn. 174, 42 N. W. (2d) 704; Hallada v. G. N. Ry. Co. 244 Minn. 81, 69 N. W. (2d) 673; Marlowe v. Gunderson, 260 Minn. 115, 109 N. W. (2d) 323.

■ Whether improper remarks in the presence of the jury are such as are calculated to prejudice the case is to be de-

termined ordinarily by the trial court, and an order granting or refusing a new trial for such cause will not be disturbed on appeal except in a case of clear abuse of discretion. Watson v. St. Paul City Ry. Co. 42 Minn. 46, 43 N. W. 904.

This court has said more than once that the trial court is in a much better position than an appellate court to determine whether substantial prejudice has resulted from misconduct. Brecht v. Town of Bergen, 182 Minn. 603, 235 N. W. 528; Bush v. Havir, 253 Minn. 318, 332, 91 N. W. (2d) 784, 793.

Undoubtedly the presiding judge at the trial had a much better opportunity to assess how damaging defendants' questioning was to plaintiffs' cause than this court can have from the cold record. The court below made its decision on the basis of a firsthand experience. It is fair to assume that the trial court properly exercised its discretion in deciding that it was necessary to grant a new trial, not as a disciplinary measure, but to prevent a miscarriage of justice, since plaintiffs had clearly been prejudiced by defendants' injecting into the record elements which in fact were improper and had no bearing on the issues.

The trial court further indicated by its memorandum that it felt that the weight of the evidence favored a finding that Angeline in fact sustained her back injury in the accident, but that it would not have interfered with the jury's implied finding that she did not, were it not for the prejudicial questions and statements of defendants' counsel. It is clear from the memorandum that the trial court reached a carefully considered determination in granting the motion for a new trial, and on the record before us we can find nothing indicating an abuse of discretion in that determination.

Plaintiffs contend that their acceptance of the remittitur pursuant to the order conditionally denying a new trial should not preclude them from contesting the remittitur after defendants' appeal from the entry of judgment.

The common-law rule, followed until recently almost without exception, is that a party who, in lieu of being required to under-

go a new trial, consents to a remittitur of a jury verdict deemed excessive by the trial judge has made an election and is thereby precluded on appeal from complaining of the amount of the judgment awarded him. Under this rule, a party voluntarily accepting the reduction of damages awarded him binds himself to that relief, whether or not he accepts the same under protest.

A few states now allow review of the consent to a remittitur under statute or rule of procedure. See, Annotation, 16 A. L. R. (3d) 1327, 1332. There is no statute or rule of civil procedure which provides for such review and no case in this state expressly holding that such a right of review exists.

In 1963 the Wisconsin Supreme Court, which had followed the common-law rule, modified its position in Plesko v. City of Milwaukee, 19 Wis. (2d) 210, 120 N. W. (2d) 130, 16 A. L. R. (3d) 1315. In that case the jury awarded a verdict of $9,950 to plaintiff as compensation for personal injuries suffered by her when a tree fell upon an automobile in which she was seated. On defendant's motion for a new trial, the court offered plaintiff the option of accepting a remittitur of $4,450 or having a new trial on damages alone. Plaintiff accepted the remittitur, and defendant appealed from the judgment. On appeal, plaintiff moved for a review of the trial court's ruling that the jury's award was excessive and that $5,500 was a reasonable amount upon which to give plaintiff an option to accept judgment for that amount or have a new trial on damages only. Defendant argued that the issue could not be properly raised on appeal because plaintiff had consented to the remittitur, citing Burmek v. Miller Brewing Co. 12 Wis. (2d) 405, 107 N. W. (2d) 583, in which the common-law rule had been applied.

The Wisconsin court limited the rule applied in Burmek to the situation where the party awarded damages appeals. The court held that where an opposing party appeals, the party who has accepted the remittitur in lieu of a new trial on damages may nevertheless obtain a review of the trial court's determination

of the damage issue, explaining (19 Wis. [2d] 221, 120 N. W. [2d] 135, 16 A. L. R. [3d] 1324):

"The reasons motivating the majority to adopt the foregoing rule are these: The objective underlying the recommended procedure for granting an option to accept judgment for a reduced amount of damages in lieu of having a new trial, where the damages awarded by the jury are determined by the trial court to be excessive, is to avoid the delay and expense of an appeal or a new trial. In most situations, it is likely that the party will accept judgment for such reduced damages rather than undergo the expense, delay, and uncertainty of result of an appeal or new trial. Nevertheless, if a party found liable to pay damages appeals the judgment resulting from the other party's accepting such reduced damages, this objective has been negatived. When plaintiff is forced to undergo an appeal by the action of an opposing party, after plaintiff has accepted judgment for such reduced damages, it seems unfair to prevent his having a review of the trial court's determination leading to the reduction in damages, especially if plaintiff has accepted same only to avoid the delay and expense attending an appeal. Furthermore, the new rule herein announced may to some extent discourage appeals by the party held liable because of the possibility that the party who has accepted judgment for the reduced damages may prevail on his motion for review and have the jury's verdict reinstated."

In the Plesko case, the appealing defendant and the plaintiff both attacked the trial court's determination of damages. Plaintiff contended that the trial court erred in holding the jury's award of damages excessive. Defendant further argued that the sum of $5,500 determined by the trial court to be a reasonable amount was excessive. To this, the Wisconsin court responded (19 Wis. [2d] 221, 120 N. W. [2d] 135, 16 A. L. R. [3d] 1325):

"* * * Under both contentions *this court will not disturb the trial court's determination unless we find an abuse of discretion.*

\* \* \* A review of the evidence concerning damages is necessary in order to determine whether or not the trial court abused its discretion." (Italics supplied.)

After reviewing the evidence, the court, affirming the remittitur, said (19 Wis. [2d] 224, 120 N. W. [2d] 136, 16 A. L. R. [3d] 1326):

"The trial court in its memorandum opinion carefully analyzed the significant portions of the evidence bearing on damages and concluded the award of $9,950 was excessive. We find no abuse of discretion in this conclusion nor in its fixing $5,500 as a reasonable award for plaintiff's injuries in granting her the option to accept this amount in lieu of a new trial limited to damages."

In a recent California decision, Templeton Feed and Grain v. Ralston Purina Co. 69 Cal. (2d) 461, 72 Cal. Rptr. 344, 446 P. (2d) 152, the California court cited and discussed Plesko in a footnote as partial support for that court's holding that a plaintiff's consent to a remittitur did not preclude him from cross-appealing from the judgment and raising a severable issue concerning exemplary damages.

Our court, although never expressly so holding, indicated in a personal injury action, Thill v. Modern Erecting Co. 272 Minn. 217, 136 N. W. (2d) 677, that if a plaintiff properly cross-appealed under the rules, it would review the trial court's reduction of damages in lieu of a new trial. In the Thill case, two defendants appealed from an order denying their motions for judgment n. o. v. or a new trial upon the condition plaintiff accept a reduction of damages from $642,400 to $375,000, which he did. In this court he sought to have the verdict reinstated, and we said (272 Minn. 233, 136 N. W. [2d] 688):

"It is difficult to understand how plaintiff can make an eleventh-hour appeal for reinstatement of the verdict. He filed a written consent to its reduction, and he failed to make a cross-appeal in this court. Under these circumstances, we must con-

clude that plaintiff is bound by his acceptance of the reduced award."

It would appear from the statement in the Thill case that had plaintiff properly cross-appealed for a review this court would have been disposed to review the reduction.

Plaintiffs here have cross-appealed for a review. Since they have done so, we adopt the rule adopted by the Wisconsin court in the Plesko case. We need not face the issue of review if plaintiff first appeals at this time, but hold now that since plaintiffs no doubt consented to the reduction in lieu of being obliged to undergo the risk, expense, and delay incident to another trial they should have the right to have the remittitur reviewed on proper cross-appeal.

■ Of course, whether or not we should reinstate the verdict or alter the remittitur in this case depends upon whether a showing of an abuse of discretion by the trial judge has been made. The requirement of a remittitur is within the trial court's discretion when a motion for a new trial is made pursuant to Rule 59.01(5), Rules of Civil Procedure. The trial judge then takes all the evidence and circumstances into consideration and can require a remittitur as a condition of denial of the motion if he feels the damages were excessive and influenced by passion and prejudice. This court will overturn that ruling only on a showing that the trial court had abused its discretion.

In arguing that the trial court should not have ordered a total remittitur of $9,000, plaintiffs cite two cases which have allowed recovery for amounts of $18,000 or more to plaintiffs sustaining similar injuries. Neither case is controlling here. Plaintiffs suggest also that the trial court reduced the verdict for the sole reason that he felt defendants would then pay the judgment and not appeal. There is no support in the record for this contention. The trial court gave no reason for the remittitur upon defendants' motion for a new trial. In determining whether a verdict is excessive, the trial judge must consider all the evidence, the demeanor of the parties, and the circumstances of the trial, and

in his discretion reduce the verdict if its amount is unsupported. There is no positive showing in this record that there was an abuse of discretion in ordering the remittitur in this case.

On the record herein the judgment must be affirmed.

Affirmed.