[Civ. No. 35575. First Dist., Div. Four. Jan. 14, 1976.]

WILLIAM C. MILLER, Plaintiff and Appellant, v.
NATIONAL AMERICAN LIFE INSURANCE COMPANY
OF CALIFORNIA, Defendant and Appellant.

## COUNSEL

Carroll, Burdick & McDonough, John K. Stewart and Franklin Silver for Defendant and Appellant.

Garry, Dreyfus, McTernan, Brotsky, Herndon & Pesonen and David E. Pesonen for Plaintiff and Appellant.

## OPINION

CALDECOTT, P. J.—Plaintiff, respondent and cross-appellant William C. Miller (hereinafter respondent) commenced this action against defendant, appellant and cross-respondent National American Life Insurance Company of California (hereinafter appellant) in the Superior Court of the City and County of San Francisco. The complaint set forth two causes of action: breach of a contract of disability insurance, and fraud in inducing respondent to enter the contract. The complaint sought compensatory and punitive damages.

Following a jury trial judgment was entered in favor of respondent for $9,203.34 general damages and $125,000 punitive damages. Appellant moved for judgment notwithstanding the verdict and a new trial. The court denied the motion for judgment notwithstanding the verdict, but conditionally granted the motion for new trial on the issue of punitive damages unless respondent would remit $85,000 of the punitive damage award. Respondent filed the remittitur, which stated that "said waiver, which is unconditional for the purpose of entry of judgment, shall be without prejudice to plaintiff's raising all legal issues growing out of the trial and post-trial proceedings herein in any appeal that may be taken from the judgment." Appellant appealed from the judgment and the order denying the motion for judgment notwithstanding the verdict. Respondent filed a notice of cross-appeal "from the order conditionally granting defendant's motion for a new trial."

Although appellant's notice of appeal purports to be from the entire judgment, appellant has limited its appeal to the issues of fraud and punitive damages,[1] and respondent has cross-appealed as to the reduction of punitive damages.

I

Appellant contends that the evidence is insufficient to support the verdict of fraud and the award of punitive damages. Respondent pleaded (and instructions were given upon) two causes of action: breach of contract, and fraud in the inducement of the contract. The complaint sought both compensatory and punitive damages.

The applicable statute governing punitive damages is Civil Code section 3294: "In an action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, express or implied, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant." ██ Punitive damages are not available in an action based solely upon breach of a contractual obligation, even where the breach is intentional, wilful, or in bad faith. (*Crogan* v. *Metz,* 47 Cal.2d 398, 405 [303 P.2d 1029]; *Freedman* v. *The Rector,* 37 Cal.2d 16, 21-22 [230 P.2d 629, 31 A.L.R.2d 1].) However, if the action is also in tort, "exemplary damages may be recovered upon a proper showing of malice, fraud or oppression even though the tort incidentally involves a breach of contract." (*Schroeder* v. *Auto Driveaway Co.,* 11 Cal.3d 908, 921 [114 Cal.Rptr. 622, 523 P.2d 662]; *Fletcher* v. *Western National Life Ins. Co.,* 10 Cal.App.3d 376, 400 [89 Cal.Rptr. 78, 47 A.L.R.3d 286].)

Respondent's claim of fraud, though incident to the contract, is in tort, and will support a punitive damage award upon proper proof. (*Kuchta* v. *Allied Builders Corp.,* 21 Cal.App.3d 541, 549 [98 Cal.Rptr. 588]; *Wetherbee* v. *United Insurance Co. of America,* 265 Cal.App.2d 921, 928-929 [71 Cal.Rptr. 764].) Indeed, insofar as the words "oppression, fraud, or malice" in Civil Code section 3294 are in the disjunctive, proof of the cause of action for fraud is itself an adequate basis for awarding punitive damages. (*Oakes* v. *McCarthy Co.,* 267 Cal.App.2d 231, 263 [73 Cal.Rptr. 127].) The court below correctly instructed that, in order to award punitive damages, the jury would have to first find for respondent

---

[1]Appellant has paid respondent the sum awarded as compensatory damages.

on the fraud cause of action; a finding for respondent on the breach of contract cause alone would only support compensatory damages.[2]

Appellant has attacked the sufficiency of the evidence to sustain the jury's finding of fraud, which is implicit in its award of punitive damages.[3] Appellant contends that the evidence is insufficient in two regards: the element of misrepresentation, and the element of intent to defraud at the time representations were made.

The principles governing appellate review of the sufficiency of evidence to support the verdict have been stated as follows: "(1) all conflicts must be resolved for the respondent and all legitimate and reasonable inferences indulged in to uphold the verdict where possible; (2) the appellate court's power begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the jury's conclusion; and (3) when two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court." (*Estate of Gelonese,* 36 Cal.App.3d 854, 861 [111 Cal.Rptr. 833].)

The court instructed the jury that two representations by appellant were alleged by respondent: "(a) that it would pay plaintiff's monthly mortgage payments in the event that plaintiff was totally disabled from performing his occupation as a painter said payments to be made for a period up to a maximum of twelve months, and (b) that defendant would pay plaintiff's monthly mortgage payments in the event that the plaintiff was totally disabled from performing an occupation or employment for which he was reasonably qualified by reason of his station in life, his education, training, and experience for an additional period up to a maximum of 48 months."

[2]Respondent did not plead, nor was the jury instructed as to, tortious breach of the insurer's duty to deal fairly and in good faith with the insured, which has been the basis of punitive damage awards in other recent cases. (*Cain* v. *State Farm Mut. Auto. Ins. Co.,* 47 Cal.App.3d 783 [121 Cal.Rptr. 200]; *Richardson* v. *Employers Liab. Assur. Corp.,* 25 Cal.App.3d 232 [102 Cal.Rptr. 547], overruled on another point in *Gruenberg* v. *Aetna Ins. Co.,* 9 Cal.3d 566, 580, fn. 10 [108 Cal.Rptr. 480, 510 P.2d 1032]; *Fletcher* v. *Western National Life Ins. Co., supra,* 10 Cal.App.3d 376.)

[3]Respondent has taken the position on appeal that a finding of *either* fraud or oppression would support the punitive damage award. This argument is erroneous, because the only tort pleaded and instructed upon was fraud and unless that tort was established no exemplary damages were permitted regardless of any showing of oppression.

■ Appellant asserts that these representations, admittedly contained only in the insurance policy and not in any communications to the respondent prior to his entering into the contract, are insufficient as a matter of law. Without citation of authority, appellant asserts that representations in the contract itself will not support a finding of fraud; rather, it claims that specific false communications distinct from and prior to the agreement are required.

The contention is without merit. It is well settled that a "promise made with no intention of performing is actionable fraud where the other party relies upon it as an inducement to enter into an agreement." (*Brockway* v. *Heilman,* 250 Cal.App.2d 807, 811 [58 Cal.Rptr. 772].) Although the two cases most closely analogous to the instant situation involved representations in addition to those in the contract itself (*Wetherbee* v. *United Insurance Co. of America, supra; Sharp* v. *Automobile Club of So. Cal.,* 225 Cal.App.2d 648 [37 Cal.Rptr. 585]), in one the court also found fraud in the fact that the insurance company never intended to fulfill the terms of its policies. (*Wetherbee, supra,* 265 Cal.App.2d at p. 932.) While the inducement may be more blatant where, as in *Wetherbee,* the insurance company misrepresents its intentions in a separate letter intended to dissuade an insured from terminating his coverage, it is no less apparent where, as here, it is found in the very contractual promises that constitute the consideration for which the insured enters the agreement and exchanges his premium payments. (Cf. *Glesenkamp* v. *Nationwide Mutual Insurance Company,* 344 F.Supp. 517, 518-519.)[4]

■ Appellant's second contention is that there was no evidence that it intended not to honor its contractual promises at the time the agreement was entered. "The law is established in California that, since direct proof of fraudulent intent is often an impossibility, because the real intent of the parties and the facts of a fraudulent transaction are peculiarly in the knowledge of those sought to be charged with fraud, proof indicative of fraud may come by inference from circumstances surrounding the transaction, the relationship, and interest of the parties." (*Taylor* v. *Osborne-Fitzpatrick Fin. Co.,* 57 Cal.App.2d 656, 661 [135 P.2d 598]; *Santoro* v. *Carbone,* 22 Cal.App.3d 721, 727-728 [99 Cal.Rptr. 488].) Subsequent conduct of an insurer in processing a claim may support an

---

[4]Appellant asserts that such a rule would place the risk on the insurer that an erroneous denial of coverage would give rise to an inference of fraud. However, in order to prove fraud the insured must show that the insurer did not *intend* to fulfill its representations as to coverage *at the time the contract was entered into;* mere denial of coverage of course will not suffice.

inference of prior intent not to fulfill its representations. (*Wetherbee, supra,* 265 Cal.App.2d at p. 932.)

In the instant case there was sufficient evidence concerning appellant's conduct to support such an inference. The policy involved was one of the two most commonly used by appellant. The doctor's certificate on the claim form read: "How long was or will patient be continuously disabled (unable to work)? From _____19_____ through _____19_____." Claims examiners were instructed that it was company policy to read the word "through" in its claims forms as "to," indicating termination of disability, even though there were no instructions on the form to so indicate to the attending physician.[5] Benefits were terminated automatically in this fashion, without inquiry as to the doctor's intended meaning.

Moreover, appellant relied on its own interpretation of the physician's subsequent statement, again without communicating with the doctor in spite of its own admitted uncertainty (evidenced by the testimony and actions of the claims examiner, who was forced to seek assistance from his superior). The wording of the questions, the policy of interpretation without warning or guidance to the attending physician, and the failure to consult the doctor as to an acknowledged uncertainty all lend support to the inference of an intent not to live up to the promised coverage. As stated in *Wetherbee:* "Under these circumstances, it is obvious that defendant's eagerness to seize upon the admission by plaintiff's doctor as a ground for cancellation of plaintiff's benefits furnishes ample support for a finding that it never intended to fulfill either the representations in its letter of August 1958 or the terms of the two policies." (265 Cal.App.2d at p. 932.) Moreover, in view of this evidence, appellant's later handling of the claim may also be seen as bad faith and procrastination in furtherance of this intention. Though the jury could have reached a different conclusion, such an inference is permissible where the evidence is capable of either of two interpretations. The evidence thus sustains the verdict of fraud and was sufficient to support punitive damages as well.

---

[5]Appellant's procedure required monthly proof of disability. A claims examiner testified that the disability was considered continuing if the doctor used words such as "continuing" or "unknown" after the word "through," but he acknowledged that there were no such instructions imparted to the physician. Moreover, respondent's doctor testified that similar forms used in State Disability Insurance claims specifically instructed physicians *not* to use such indefinite terms.

## II

Appellant also contends that two portions of the instructions as to fraud were erroneous and prejudicial. The court refused the proffered fraud instructions of both parties and gave its own version.

■ Appellant first attacks paragraph two of the instructions. The court instructed that plaintiff's claim for misrepresentation and fraud had six essential elements; the first element being that certain misrepresentations (naming them) were made. The second and contested paragraph read as follows: "That at the time said representations were made they were false in that defendant's true intention was to deny the payment of the benefits lawfully due plaintiff under the policy *without reasonable cause for such denial* which intention defendant concealed from plaintiff." (Italics added.)

Appellant's assertion that this language permitted the jury to infer intent to defraud upon a finding of negligence (i.e., that appellant's denial of the claim was merely without reasonable cause) is without merit. The instruction plainly required the jury to find that appellant intended at the time it entered the contract to deny claims without reasonable cause for denial. Although (as appellant notes) mere denial without reasonable cause is itself insufficient to establish fraud, preexisting intent to so act *is* fraudulent intent.

■ A similar rationale answers appellant's other specification of error. Paragraph 4 reads as follows: "That plaintiff was induced to pay premiums on the insurance policy in justifiable reliance *upon the good faith interpretation of the terms in the policy* and plaintiff was deceived by the said representations of defendant." (Italics added.)

Appellant contends that this language permitted the jury to base a punitive damage award on a finding of violation of the duty of good faith. The paragraph, however, concerns justifiable reliance by the insured upon the inherent obligation of the insurer to act fairly and in good faith. (Cases delineating this duty have been noted earlier, and appellant does not contest its existence.)

The instructions must be read as a whole. (4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 244, p. 3057.) In view of the correct instructions concerning fraudulent intent it is apparent that this paragraph merely describes respondent's reliance on the obverse of that intent. Respondent

was justified in relying upon the inherent promise of good faith performance and appellant, in planning not to live up to its contractual obligations, did not intend to fulfill that promise. The challenged statement was neither erroneous nor misleading.

## III

Respondent has cross-appealed from the order conditionally granting appellant's motion for a new trial, and thus from that portion of the judgment entered pursuant to the remittitur. Respondent contends that the reasons specified by the trial court in granting the motion are inadequate.

Preliminarily, we must determine whether respondent has waived the right to cross-appeal by his acceptance of the remittitur. This precise issue is unsettled in this state. *Pease* v. *Beech Aircraft Corp.*, 38 Cal.App.3d 450 [113 Cal.Rptr. 416], is the most recent California case involving the point. A jury awarded plaintiffs compensatory and punitive damages. The trial court granted a new trial, inter alia, as to the compensatory damages unless plaintiffs would remit a portion of the award, which the court deemed excessive for specified reasons. Plaintiffs consented to the remittitur, and when defendants appealed from the judgment, plaintiffs appealed from the conditional order.

Defendant challenged the right of plaintiffs to appeal. The court, in discussing the issue, quoted from a Wisconsin case permitting such an appeal by remitting plaintiffs when the opposing party has appealed. (*Plesko* v. *City of Milwaukee,* 19 Wis.2d 210 [120 N.W.2d 130, 16 A.L.R.3d 1315].) It also noted the California Supreme Court case of *Templeton Feed & Grain* v. *Ralston Purina Co.,* 69 Cal.2d 461 [72 Cal.Rptr. 344, 446 P.2d 152], discussed below.

However, *Pease* did not resolve the issue directly. Although the court held that plaintiffs could not appeal from the order, it apparently based this conclusion on the factual observation that plaintiffs had not challenged the adequacy of the award, but only the sufficiency of the judge's specifications under Code of Civil Procedure section 657. The appellate court found the judge's reasons satisfactory under the statute, and ruled that plaintiffs had no "right to appeal." (38 Cal.App.3d at pp. 468-470.)

However, this factually based conclusion begs the question, for if plaintiffs had *waived* the right to appeal, the appellate court could not even consider the sufficiency of the trial judge's reasons for granting the conditional order. Thus, we must analyze the point left undecided by *Pease.* "The common-law rule, followed until recently almost without exception, is that a party who, in lieu of being required to undergo a new trial, consents to a remittitur of a jury verdict deemed excessive by the trial judge has made an election and is thereby precluded on appeal from complaining of the amount of the judgment awarded him. Under this rule, a party voluntarily accepting the reduction of damages awarded him binds himself to that relief, whether or not he accepts the same under protest." (*Jangula* v. *Klocek,* 284 Minn. 477, 484-485 [170 N.W.2d 587, 592]; and see 16 A.L.R.3d Ann. 1327, 1328 and Supp. 1975, p. 29.)

Three cases decided by the California Courts of Appeal prior to *Templeton* adopted this common law rule. In *Roth* v. *Shell Oil Co.,* 185 Cal.App.2d 676 [8 Cal.Rptr. 514], plaintiff was awarded $540 compensatory and $10,000 punitive damages. A motion for new trial was conditionally granted; plaintiff agreed to remit $8,000 of the punitive damage award, and the new trial was denied. Plaintiff was held to have waived any right to appeal the judgment or conditional order. (185 Cal.App.2d at p. 680.)

In *Fairfield* v. *American Photocopy Equip. Co.,* 158 Cal.App.2d 53 [322 P.2d 93], a new trial was conditionally granted unless plaintiff agreed to remit the entire punitive damages award. Plaintiff filed the remittitur, and was held to have waived the right to appeal on the subject of punitive damages even though he made the remission under protest. (158 Cal.App.2d at p. 57.)

Both of these cases cited *Conlin* v. *Southern Pacific R. R. Co.,* 40 Cal.App. 743 [182 P. 71], as supporting authority. In *Conlin,* plaintiff accepted a remittitur of a portion of the judgment. The appellate court refused to consider his contentions concerning refusal of the trial judge to instruct the jury as to interest on the award, holding instead that the remittitur constituted an acceptance of the judgment as modified.

In *Templeton Feed & Grain* v. *Ralston Purina Co., supra,* the Supreme Court held that acceptance of a remittitur as to compensatory damages did not prevent a party from appealing as to the *severable* issue of punitive damages. Moreover, the court expressly disapproved *Conlin, Fairfield* and *Roth.* (69 Cal.2d at p. 471.) The rationale for disapproval of

*Conlin* is clear: the issue of interest is severable from that of damages. However, it is not apparent what effect the court intended in rejecting the other two cases, neither of which involved the severability issue (although both expressly relied on the erroneous *Conlin* holding).

■ It is settled in this state that a party cannot accept the benefits of a judgment, in whole or in part, and then attack it by appeal. (*Mathys* v. *Turner,* 46 Cal.2d 364, 365 [294 P.2d 947]; *Preluzsky* v. *Pacific Co-operative C. Co.,* 195 Cal. 290, 294 [232 P. 970]; *Turner* v. *Markham,* 152 Cal. 246, 247 [92 P. 485]; 6 Witkin, *supra,* Appeal, § 136, p. 4131.) This rule mandates the conclusion that when the plaintiff has consented to a remittitur he cannot thereafter appeal on any unseverable issue. By consenting to the reduced award, the plaintiff has accepted the benefit of avoiding new trial, delay, and uncertainty on appeal. He cannot be permitted to reap this benefit and yet contest the very order by which the benefit was conferred.[6]

However, when plaintiff accepts a remittitur and *defendant* appeals, the case is in a different posture. The court in *Templeton,* though not ruling on this precise matter, did note the Wisconsin rule allowing a remitting plaintiff to appeal the issue of damages when the defendant has first appealed from the judgment. (69 Cal.2d at p. 469, fn. 5, citing *Plesko* v. *Milwaukee, supra.*) The Wisconsin court fully discussed the situation posed by the instant case in explicating the basis for its decision: "The objective underlying the recommended procedure for granting an option to accept judgment for a reduced amount of damages in lieu of having a new trial, where the damages awarded by the jury are determined by the trial court to be excessive, is to avoid the delay and expense of an appeal or a new trial. In most situations, it is likely that the party will accept judgment for such reduced damages rather than undergo the expense, delay, and uncertainty of result of an appeal or new trial. Nevertheless, if a party found liable to pay damages appeals the judgment resulting from the other party's accepting such reduced damages, this objective has been negatived. When plaintiff is forced to undergo an appeal by the action of an opposing party, after plaintiff has accepted judgment for such reduced damages, it seems unfair to prevent his having a review of the trial court's determination leading to the reduction in damages, especially if plaintiff has accepted same only to avoid the delay and expense attending an appeal. Furthermore, the new

---

[6]In limiting a prior decision to this specific situation, the Wisconsin court in *Plesko* reached this same result. (19 Wis.2d at pp. 220-221 [120 N.W.2d at p. 135, 16 A.L.R.3d at p. 1324].)

rule herein announced may to some extent discourage appeals by the party held liable because of the possibility that the party who has accepted judgment for the reduced damages may prevail on his motion for review and have the jury's verdict reinstated." (19 Wis.2d 210, 221 [120 N.W.2d 130, 135, 16 A.L.R.3d 1315, 1324-1325].) The Wisconsin court ruled that: "[W]hen an opposing party appeals, the party who has accepted the option to take judgment for such a reduced amount of damages may nevertheless have a review on appeal of the trial court's determination of the damage issue. If it is determined on such review, however, that no error was committed by the trial court's disposition of the damage issue, such party's prior acceptance of judgment for the reduced amount will be affirmed unless the result of the principal appeal requires otherwise." *(Id.)*

Two other courts cited the same reasons in adopting the *Plesko* rule, allowing the remitting party to appeal but only when the defendant first appeals from the judgment. (*Jangula* v. *Klocek, supra,* 284 Minn. 477, 485-487 [170 N.W.2d 587, 593], also citing *Templeton*; *Mulkerin* v. *Somerset Tire Service, Inc.,* 110 N.J.Super. 173 [264 A.2d 748, 750].) At least one other state appears to have adopted the rule by court decision (*Spizer* v. *Dixie Brewing Co.* (La.App. 1968) 210 So.2d 528, 530), and at least five states apply the principle pursuant to statutes or statutory construction. (*McCormick* v. *Alabama Power Company* (Ala. 1975) 306 So.2d 233, 235; *Mangiameli* v. *Ariano* (Nebr. 1934) 253 N.W. 871, 875; *Schliessman* v. *Anderson* (1969) 31 App.Div.2d 367, 369 [298 N.Y.S.2d 646, 647-648]; *Templeton* v. *Quarles* (Tenn.App. 1963) 374 S.W.2d 654, 661; *Flanigan* v. *Carswell* (Tex. 1959) 324 S.W.2d 835, 839.) At least three states have recently elected to retain the common law rule, which apparently remains the majority position. (*Webb* v. *Rench* (Mo. 1972) 476 S.W.2d 570, 573; *Hudson* v. *Otero* (1969) 80 N.M. 668, 672 [459 P.2d 830, 834]; *Friendly Finance Company of Biloxi, Inc.* v. *Mallet* (Miss. 1971) 243 So.2d 403, 407.)

The practical rationale of *Plesko* and its companion cases from other states is most persuasive, particularly in light of the observation in *Templeton* that: "Indeed, in a case such as the instant one in which defendant appeals from the judgment, the remitting plaintiff not only faces continued litigation at the appellate and, perhaps, trial stages, a result he may have sought to avoid by his consent, but also ordinarily does not enjoy, pending determination of the appeal, the fruits of the judgment awarded him. Under such circumstances no possibility arises that the plaintiff may retain the benefits of the judgment and obtain still

another recovery in a new trial following an unqualified reversal or avoid detriments incidental to the earlier judgment. (Cf. *Preluzsky* v. *Pacific Coop. Cafeteria Co., supra,* 195 Cal. 290, 294.)" (69 Cal.2d at p. 469, fn. 5; see also 4 Cal.Jur.3d, Appellate Review, § 122, p. 177.) ■ Where, as here, the defendant's appeal has deprived the plaintiff of the benefits he has sought by his consent to the remittitur, the plaintiff cannot be held to have waived his right to appeal.

## IV

■ Respondent contends that the trial court's reasons for conditionally granting the new trial are without support in the record. ■ The new trial motion is addressed to the sound discretion of the trial judge. In ruling on it, he is vested with authority to disbelieve witnesses and reweigh the evidence. On appeal, all presumptions are in favor of the order as against the verdict, and the appellate court will reverse only if a manifest and unmistakable abuse of discretion is shown. (*Schroeder* v. *Auto Driveaway Co., supra,* 11 Cal.3d 908, 918; *Weathers* v. *Kaiser Foundation Hospitals,* 5 Cal.3d 98, 109 [95 Cal.Rptr. 516, 485 P.2d 1132]; *Mercer* v. *Perez,* 68 Cal.2d 104, 112-113 [65 Cal.Rptr. 315, 436 P.2d 315].)

■ In its order conditionally granting a new trial on the issue of punitive damages, the court below stated as its ground that the sum awarded was "grossly excessive and that the jury clearly should have rendered a different verdict as to the amount of punitive damages." The court enumerated three reasons in support of this ground: appellant's conduct was not so grossly outrageous as other cases in which similar awards of punitive damages were sustained; the award was excessive in view of appellant's financial position; and the jury had been influenced by an incident during trial, wherein a recess was called when the plaintiff suffered an attack of angina pectoris and had to be treated by a doctor in the courtroom. Respondent attacks each of these reasons on separate bases.

Code of Civil Procedure section 657 provides that where an order granting a new trial is made on the ground of excessive damages (subd. 5) on appeal "it shall be conclusively presumed that said order as to such ground was made only for the reasons specified in said order or said specification of reasons, and such order shall be reversed as to such ground only if there is no substantial basis in the record *for any of such reasons.*" (Italics added.) Thus, if any one of the reasons stated by the trial court is supported by the record, we must affirm the order. (Cf.

*Silberg* v. *California Life Ins. Co.,* 11 Cal.3d 452, 463 [113 Cal.Rptr. 711, 521 P.2d 1103]; *Hale* v. *Farmers Ins. Exch.,* 42 Cal.App.3d 681, 693 [117 Cal.Rptr. 146].)

Although there was some disagreement as to what portion of the jury witnessed the incident, respondent does not dispute the adequacy of the third reason specified by the trial court; indeed, he admits that "the incident was affecting and might have justified a motion for mistrial." However, he asserts that appellant deliberately waived the point. Respondent cites two statements by his own counsel, alleging that appellant's counsel admitted this strategy, as evidence that appellant's waiver was intentional.

The trial court could properly have construed appellant's inaction as a waiver, and might have denied the new trial motion. (*Horn* v. *Atchison, T. & S. F. Ry. Co.,* 61 Cal.2d 602 [39 Cal.Rptr. 721, 394 P.2d 561]; *Sepulveda* v. *Ishimaru,* 149 Cal.App.2d 543, 547 [308 P.2d 809].) "But where the motion is *granted,* the reviewing court will not reverse the order simply because the moving party failed to object or invited the error. In other words, waiver and estoppel normally preclude reversal on appeal from a judgment, . . . but they do not restrict the discretion of the trial judge to grant a new trial for error." (5 Witkin, *supra,* Attack on Judgment in Trial Court, § 119, p. 3697; *Malkasian* v. *Irwin,* 61 Cal.2d 738, 747 [40 Cal.Rptr. 78, 394 P.2d 822].)

The court below thus acted within its discretion in conditionally granting the new trial on the ground of excessive punitive damages for the third reason stated. We need not reach the other two reasons specified in support of the order.

The judgment is affirmed. The order denying motion for judgment notwithstanding the verdict is affirmed. The order conditionally granting a motion for new trial is affirmed. Each party to bear their own costs on appeal.

Rattigan, J., and Christian, J., concurred.