Sharon K. SIEREN, f.k.a. Sharon K. Bowling, Appellant,

v.

AMERICAN FAMILY FINANCIAL SERVICES OF WISCONSIN, INC., Respondent.

No. C4–84–852.

Court of Appeals of Minnesota.

Oct. 16, 1984.

William C. Hicks, Harstad & Rainbow, Minneapolis, for appellant.

Blair F. Sheire, St. Paul, for respondent.

Heard, considered and decided by WOZ-NIAK, P.J., and FORSBERG and LESLIE, JJ.

## OPINION

LESLIE, Judge.

This is an appeal from a judgment entered in favor of the appellant for $3,226.41. The judgment was entered pursuant to an amended order of the trial court which remitted the amount of appellant's damages awarded by a jury. The appellant contests the remittitur. We reverse and reinstate the jury's verdict.

## FACTS

In October 1980, apparently at the request of the appellant's husband, the respondent, American Family Financial Services of Wisconsin, agreed to lend $6,500.00 to the appellant and her husband with a 1980 Ford Thunderbird owned jointly by the appellant and her husband pledged as collateral. Appellant contends that her husband forged her signature and that she knew nothing of the loan transaction.

In April 1981 the appellant received a notice from the respondent stating that the April payment on the loan was overdue. The appellant contacted two attorneys who reviewed the loan documents to determine

the basis for the indebtedness. Her second attorney wrote a letter in May 1981 to the respondent explaining that the appellant's signature had been forged by her husband and that the security interest in the Ford Thunderbird was therefore unenforceable. He also advised the respondent that the appellant would sue if the vehicle were repossessed.

In June 1981 counsel for the respondent wrote to the appellant's attorney, requesting handwriting samples to verify the alleged forgery. Later that month a sworn affidavit and handwriting samples of the appellant were sent to the respondent. Nonetheless, on July 7, 1981, the respondent repossessed the appellant's vehicle.

Upon notification of the repossession, appellant's attorney informed the respondent that if the vehicle were not returned immediately the appellant would commence a lawsuit for wrongful repossession. The parties agreed that if the vehicle were returned in the same condition it was in when it was repossessed, and if the respondent would release appellant from liability on the loan, appellant would not sue the respondent for the repossession.

The vehicle was returned to the appellant on July 14, 1981, in a damaged condition which did not exist prior to the repossession. The appellant's claim for these damages was denied in part by the respondent, and the appellant commenced this action for wrongful repossession and conversion, requesting compensatory damages in the amount of $619.31, physical, mental and economic damages in the amount of $5,000.00, and punitive damages in the amount of $10,000.00.

Following a trial of this action, a jury awarded the appellant $619.31 for damages to her vehicle and $10,000.00 in punitive damages. The respondent moved for judgment notwithstanding the verdict, a new trial, or remittitur, and the trial court granted remittitur in the amount of $7,500.00, reducing the amount of the punitive damage award to $2,500. The appellant contests the trial court's decision to grant remittitur.

## ISSUES

1. May the trial court's memorandum be used to interpret its order where the memorandum was not specifically incorporated by reference into the order?

2. Did the trial court properly allow the respondent's request for remittitur?

## ANALYSIS

### I.

#### *Memorandum*

The trial court's order gives no reason for its reduction in the award of punitive damages, apart from the boilerplate phrase "[b]ased on arguments of counsel, briefs filed, and on all the files, records and proceedings herein * * *." The memorandum which is attached to the order, however, provides in relevant part:

Plaintiff is entitled to punitive damages, but the amount awarded is highly excessive. By reducing the award to $2,500, plaintiff will be adequately compensated.

Because the trial court did not expressly indicate in its order that the attached memorandum should be made a part thereof, the respondent argues that the language in the memorandum cannot be used to clarify and interpret the court's order. The issue which we must address is whether the language in the court's memorandum clarifies and explains the order, or whether the language in the memorandum contradicts the order. In *McMillen v. Meyer*, 246 Minn. 132, 135–136, 74 N.W.2d 393, 395 (1956), the court explained:

The memorandum, which was not made a part of the order, is of little significance since it is elementary that a trial court's memorandum may not be used to impeach, contradict, or overcome express findings or an order granting or denying a motion for a new trial where such memorandum is not made a part of the findings or order which form the basis for review on appeal. While a memorandum not expressly made a part of the

order may be referred to for the purpose of throwing light upon or explaining a decision, such memorandum may not be referred to for the purpose of impeaching, contradicting, overturning, or modifying the positive and unambiguous terms of the order. The general rule is that a memorandum of a trial judge is no part of the order or findings to which it is attached, unless expressly made a part thereof; and, whether attached or not, it may be referred to only for clarification where the trial court's order or finding is not explicit in itself and is ambiguous. (Footnotes omitted.) *See also Merriman v. Sandeen,* 267 N.W.2d 714, 716, n. 5 (Minn.1978); *Viking Automatic Sprinkler Co. v. Viking Fire Protection Co.,* 280 Minn. 250, 159 N.W.2d 250 (1968).

Because the order in this instance does not expressly indicate the trial court's reason for granting remittitur, this court may refer to the language in the memorandum to interpret and explain the court's decision.

## II.

### *Remittitur*

■ As noted above, the trial court's memorandum indicates that remittitur of punitive damages was allowed because the appellant would be "adequately compensated" despite the reduction in punitive damages. This reason for granting remittitur is unsound. The purpose of punitive damages is not to compensate a party but is, rather, "to both punish and deter according to the gravity of the act * * *," *Melina v. Chaplin,* 327 N.W.2d 19, 20, n. 1 (Minn. 1982). *See also Nye v. Blyth Eastman Dillon & Co., Inc.,* 588 F.2d 1189 (8th Cir.1978) and *E.H. Boerth Co. v. Lad Properties,* 82 F.R.D. 635 (D.Minn.1979) (holding that punitive damages are not duplicative, since they are designed to punish, rather than to compensate). *Marston v. Minneapolis Clinic of Psychiatry & Neurology, Ltd.,* 329 N.W.2d 306, 312 (Minn. 1982) states:

The general rule is that "[w]hether punitive * * * damages are appropriate * * * is within the discretion of the jury. [Citation omitted] The weight and force to be given evidence relating to punitive damages is exclusively a jury question" and "[i]n determining whether punitive damages are unreasonably excessive, the court should consider, among other factors, the degree of malice, intent or willful disregard, the type of interest invaded, the amount needed to truly deter such conduct in the future * *." *Wilson v. City of Eagan,* 297 N.W.2d 146, 150–51 (Minn.1980); *see* Minn.Stat. § 549.20, subd. 3 (1980).

Minn.Stat. § 549.20 (1980) provides in relevant part:

Subdivision 1. Punitive damages shall be allowed in civil actions only upon clear and convincing evidence that the acts of the defendant show a willful indifference to the rights or safety of others.

\* \* \* \* \* \*

Subd. 3. Any award of punitive damages shall be measured by those factors which justly bear upon the purpose of punitive damages, including * * * the duration of the misconduct and any concealment of it, the degree of the defendant's awareness of the hazard and of its excessiveness, the attitude and conduct of the defendant upon discovery of the misconduct, the number and level of employees involved in causing or concealing the misconduct, the financial condition of the defendant, and the total effect of other punishment likely to be imposed upon the defendant as a result of the misconduct, including compensatory and punitive damage awards to the plaintiff and other similarly situated persons * *

The trial court's reasoning in this instance appears to be based upon considerations of compensation, rather than deterrence. This construction of the purpose behind a punitive damages award is not in accordance with the statute and caselaw cited above.

Our supreme court has consistently indicated that trial courts "must take care to demonstrate that they have made some examination and explanation when the size of a jury verdict is challenged." *Sorenson v. Kruse*, 293 N.W.2d 56, 62 (Minn.1980). *See also Jangula v. Klocek*, 284 Minn. 477, 488–489, 170 N.W.2d 587, 594 (1969). Only where that examination or explanation results in a clear abuse of discretion may a reviewing court reverse a trial court's decision. *Sorenson*, 293 N.W.2d at 62, *Jangula*, 284 Minn. at 488, 170 N.W.2d at 594. Despite this limited scope of review, however, in this instance we believe that the trial court's decision to grant remittitur was based upon an erroneous view of the law regarding punitive damages.

### DECISION

The trial court's memorandum which was not incorporated into its order may be examined for the purpose of explaining the court's decision. The explanation contained therein supported appellant's claim that the remittitur was based upon an erroneous view of the law. We therefore reverse and reinstate the jury's punitive damage award.